E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:   scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>    v.<br><br>THOMAS VINCENT GIRARDI, and CHRISTOPHER KAZUO KAMON,<br><br>   Defendants. | No. CR 23-47-JLS<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT CHRISTOPHER KAMON'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF OTHER ACTS UNDER FEDERAL RULE OF EVIDENCE 404(b)<br><br>Hearing Date: June 20, 2024<br>Location: Courtroom of the Hon. Josephine L. Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its opposition to defendant Christopher Kazuo Kamon's motion in limine to exclude evidence of other acts under Federal Rule of Evidence 404(b) (Dkt. 189).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 3, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


           /s/
_____
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**DESCRIPTION**                                                                      **PAGE**

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   ARGUMENT....................................................3

      A.    Inextricably Intertwined Evidence.....................3

            1.    Legal Standard..................................3

            2.    The Evidence is Inextricably Intertwined with the
                  Charged Scheme..................................4

      B.    Evidence Admissible Under Rule 404(b).................7

            1.    The Proffered Evidence Proves a Material Point as
                  It Shows Defendant Kamon's Intent, Knowledge,
                  Plan, Absence of Mistake or Accident, and Motive.....8

            2.    The Evidence is Not Too Remote in Time..........10

            3.    Defendant Committed the Other Acts..............11

            4.    Defendant Kamon's Other Acts Are Similar to the
                  Charged Offenses................................12

            5.    There is No Unfair Prejudice as Defined by Rule
                  403.............................................13

III.  CONCLUSION..................................................15

**TABLE OF AUTHORITIES**

**DESCRIPTION**                                                    **PAGE**

Huddleston v. United States,
   485 U.S. 681 (1988) ........................................... 11

United States v. Babichenko,
   543 F. Supp. 3d 930 (D. Idaho 2021) ........................... 4

United States v. Bailleaux,
   685 F.2d 1105 (9th Cir. 1982) ................................ 13

United States v. Blitz,
   151 F.3d 1002 (9th Cir. 1998) ................................ 13

United States v. Bradshaw,
   690 F.2d 704 (9th Cir. 1982) .................................. 8

United States v. Cherer,
   513 F.3d 1150 (9th Cir. 2008) ................................. 8

United States v. Daly,
   974 F.2d 1215 (9th Cir. 1992) ................................. 4

United States v. DeGeorge,
   380 F.3d 1203 (9th Cir. 2004) ................................. 4

United States v. Dorsey,
   677 F.3d 944 (9th Cir. 2012) .................................. 3

United States v. Evans,
   796 F.2d 264 (9th Cir. 1986) ................................. 13

United States v. Khan,
   993 F.2d 1368 (9th Cir. 1993) ................................ 14

United States v. Mehrmanesh,
   689 F.2d 822 (9th Cir. 1982) .................................. 8

United States v. Miller,
   874 F.2d 1255 (9th Cir. 1989) ................................. 8

United States v. Sayakhom,
   186 F.3d 928 (9th Cir. 1999) .................................. 7

United States v. Serang,
   156 F.3d 910 (9th Cir. 1998) .................................. 7

United States v. Soliman,
   813 F.2d 277 (9th Cir. 1987) .................................. 4

United States v. Vizcarra-Martinez,
   66 F.3d 1006 (9th Cir. 1995) ............................... 3, 4

ii

<u>**TABLE OF AUTHORITIES (CONTINUED)**</u>

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 403 ............................................. 8, 13

Fed. R. Evid. 404(b) ......................................... <u>passim</u>

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Defendants Thomas Vincent Girardi and Christopher Kamon are

4   charged in the indictment with a scheme to defraud former clients of

5   the Girardi Keese law firm through the misappropriation of settlement

6   funds from the law firm's client trust accounts tied to personal

7   injury legal cases.  Defendant Girardi was the founder, owner, and

8   controlling partner of Girardi Keese.  He managed the firm's business

9   and the movement of money through the firm's bank accounts, including

10  two Interest on Lawyer's Trust Accounts ("IOLTA").  Defendant Kamon

11  was the Chief Financial Officer and head of accounting at Girardi

12  Keese.  At defendant Girardi's direction, his role involved writing

13  checks and transferring funds from the firm's IOLTA accounts to pay

14  clients and also pay Girardi Keese expenses.  The indictment alleges

15  that Girardi, aided and abetted by defendant Kamon, embezzled tens of

16  millions of dollars from the settlements owed to Girardi Keese

17  clients (the "Main Fraud Scheme") and focuses on four victim-clients

18  whose settlement funds were misappropriated.  These embezzled funds

19  were then used to pay other Girardi Keese clients whose settlement

20  proceeds had previously been stolen and used for the personal use and

21  enjoyment of defendants Girardi and defendant Kamon, among others.

22       During the timeframe of the Main Fraud Scheme, defendant Kamon

23  was also engaged in a separate fraud scheme (the "Side Fraud Scheme")

24  whereby, unbeknownst to defendant Girardi and others at Girardi

25  Keese, defendant Kamon embezzled money from the Girardi Keese

26  operating accounts, which he oversaw and controlled, to fund his

27  lavish lifestyle, including payments for renovations on his personal

28  residences and payments to a female companion.  The Side Fraud Scheme

involved, among other things, defendant Kamon directing various associates to submit fabricated invoices for payment to Girardi Keese for services that were rendered, not for Girardi Keese, but rather for defendant Kamon's personal benefit, as well as defendant Kamon causing exorbitant $20,000 monthly payments be made from the Girardi Keese operating account to a female companion whom he met on an online dating website designed to pair young women with older, more affluent men. Defendant Kamon used these stolen funds to support his lavish lifestyle which included extensive remodeling of his personal properties, the purchase of exotic sports cars, extravagant travel around the world, gambling, and escorts. Moreover, as part of the Side Fraud Scheme, defendant Kamon also paid associates who in turn provided defendant Kamon with millions of dollars in cash kickbacks.

Defendant Kamon has filed a motion (the "Motion" or "Mot.") to exclude evidence related to the Side Fraud Scheme and Kamon's embezzlement of Girardi Keese funds from the firm's operating accounts because he alleges that such evidence is "other acts" evidence that the government improperly seeks to admit to prove his propensity to commit fraud. As discussed more fully below, the Motion should be denied because evidence of defendant Kamon's embezzlement of operating account funds and the Side Fraud Scheme is "inextricably intertwined" with the criminal conduct alleged against him in the underlying indictment in this case in that the evidence is both (1) part of the transactions that serve as the basis for criminal charges against defendant Kamon; and (2) necessary for the government to present a coherent theory of its case against defendant Kamon.

Alternatively, the evidence may be admitted under Federal Rule of Evidence 404(b) as proof of defendant Kamon's intent and knowledge, central and disputed elements of the charges against him, as well as proof of motive, opportunity, and absence of mistake. <u>See</u> Fed. R. Evid. 404(b). On February 28, 2024, the government gave notice that it intends to seek admission at trial in this case evidence of the Side Fraud Scheme as inextricably intertwined conduct with the Main Fraud Scheme charged in this indictment and/or as proof of defendant Kamon's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, and/or lack of accident. (<u>See</u> Exhibit A to the Motion.)[1]

## II.   ARGUMENT

### A.   Inextricably Intertwined Evidence

#### 1.   <u>Legal Standard</u>

Under well-established Ninth Circuit authority, "[t]wo general categories of other act evidence may be 'inextricably intertwined' with a charged crime and thus exempted from the requirements of [Federal Rule of Evidence] 404(b)." <u>United States v. Dorsey</u>, 677 F.3d 944, 951 (9th Cir. 2012) (2013). "First, other act evidence may 'constitute[ ] a part of the transaction that serves as the basis for the criminal charge.'" <u>Id.</u> (quoting <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1012 (9th Cir. 1995) (alteration in original)). "Second, admission of other act evidence may be

---

[1] To be clear, this evidence is offered solely against defendant Kamon, as it offers, among other things, direct evidence of his intent to participate in the Main Fraud Scheme. While the government understands that defendant Girardi seeks to separately introduce this evidence in his defense, the government objects to its admission should defendant Girardi's forthcoming motion for severance be granted over the government's objection.

'necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" Id. (quoting Vizcarra-Martinez, 66 F.3d at 1012-13 (alteration in original)); see also United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) ("evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted" to "put [defendant's] illegal conduct into context and to rebut his [defense]").

Evidence that is deemed to be "inextricably intertwined" with the charged conduct is admissible without regard to the requirements of Federal Rule of Evidence 404(b). See United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004) (evidence of prior acts that are inextricably intertwined with the facts of a defendant's current case is admissible without regard to a Rule 404(b) inquiry); United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined.'" (alteration in original)). "In illustrating a broad scheme to the jury, the Government is permitted to present "the circumstances and background of the criminal charge." United States v. Babichenko, 543 F. Supp. 3d 930, 942 (D. Idaho 2021).

### 2. The Evidence is Inextricably Intertwined with the Charged Scheme

As defendant Kamon concedes, evidence of Kamon's efforts to fraudulently divert Girardi Keese client funds for his personal use are reflected in count five of the Indictment (Motion at 8-9), which alleges that on July 9, 2020, defendant Kamon caused a wire transfer

of approximately $15,000 as payment for charges that were incurred on defendant Kamon's Girardi Keese Corporate American Express card. Defendant Kamon claims that the "government fails to tie" the payment to any Girardi Keese account or to any embezzled funds. (Mot. 9.) Not so. As expressly alleged in count five, the $15,000 payment to American Express was made directly from a Girardi Keese operating account "the source of which funds was, in part, the settlement proceeds belonging to Client 2." (See Dkt. 1 at 16.) Notably, this payment included a $9,888 charge to Greencare Designs, LLC for expenses related to renovations on a residence located in Las Vegas, Nevada that was owned by defendant Kamon. As defendant Kamon well knew, the Girardi Keese operating account was funded entirely by transfers of funds from the Girardi Keese trust accounts. But Girardi Keese was only entitled to transfer funds equal to its fees and costs related to the various cases handled by the firm.

However, because the $15,000 American Express payment was partly sourced from Client 2 settlement funds, the payment could not have been comprised of funds that were rightfully due to Girardi Keese, because, at the time of the payment to American Express, Girardi Keese had already taken more in fees and costs than the entire amount of the settlement related to Client 2's case. Additional evidence at trial will show that defendant Girardi and other attorneys at Girardi Keese went to defendant Kamon when they needed an update on what amounts were still due and owing to clients, and that defendant Kamon had access to current balances in the trust accounts and operating accounts, as well as knowledge of the amounts of fees and costs that were coded to the various client cases. A simple look at the case register (a list, to which defendant Kamon had access, of all

payments into and out of the trust account associated with a case) would show that the amount of fees and costs booked to Client 2 exceeded the actual amount of Client 2's settlement.

Moreover, both documentary and testimonial evidence at trial will show that defendant Kamon was a signer on and had control over the operating account out of which the fraudulent American Express payment charged in count five was taken. And defendant Kamon's duties and responsibilities as the CFO of Girardi Keese included ensuring that the firm's corporate Amex bills, including the Girardi Keese Amex card issued in his name, were paid. A defining characteristic of the Side Fraud Scheme was that defendant Kamon used his position as head of accounting at Girardi Keese to approve payments out of the operating account that benefitted him personally, including payments to the Girardi Keese Amex card in his name, to the detriment of the firm's clients, including Client 2, who were still owed money on their settlements. Indeed, as defendant Kamon acknowledges (Motion at 6), this is conduct that is also alleged in the Side Fraud Scheme (see Compl. Aff. ¶ 25 n.4. (filed under seal in case number 22-mj-4385); see also Information (Dkt. No. 39) ¶ 6(a) in case number 23-24-JLS (alleging "Defendant Kamon used his position as CFO of Girardi Keese to knowingly and intentionally embezzle funds in the custody and control of Girardi Keese and divert those misappropriated funds for his own personal enrichment and the enrichment of others."). Defendant Kamon's argument that the mere fact that he was issued a Girardi Keese corporate American Express card does not establish that the $15,000 was for unauthorized expenses (Motion at 9) falls flat in light of the fact that nearly $10,000 of that payment was made to Greencare Designs, LLC, a custom

pool and landscape design company, related to expenses associated with one of Kamon's residences in Las Vegas.  The Ninth Circuit's opinions in Dorsey and DeGeorge do not support Kamon's position (see Motion at 10-11) because, as explained above, the American Express payment related to renovations on defendant Kamon's Las Vegas house was part of the same criminal act (embezzlement of Client 2's funds) alleged in count five and took place contemporaneously with the theft of those funds from the Girardi Keese IOLTA account.

Evidence related to defendant Kamon's involvement in the Side Fraud Scheme is thus inextricably intertwined with the Main Fraud Scheme and shows, at a minimum, that through payments for personal expenses on his Girardi Keese Amex card defendant Kamon knowingly and intentionally aided and abetted the Main Fraud Scheme by funneling payments sourced from client funds for his own personal enrichment. See, e.g., United States v. Serang, 156 F.3d 910, 915 (9th Cir. 1998) (government not precluded from introducing evidence relevant to entire conspiracy or scheme simply because defendant is indicted for less than all of their actions); United States v. Sayakhom, 186 F.3d 928, 937-38 (9th Cir. 1999) (finding two mail fraud schemes inextricably intertwined where the second scheme was continuation of first, after first scheme failed).

**B.   Evidence Admissible Under Rule 404(b)**

Although, as discussed above, evidence of the Side Fraud Scheme is inextricably intertwined with defendant Kamon's charged conduct in this case, contrary to his assertion (see Motion at 11-14), such evidence is alternatively admissible under Rule 404(b) of the Federal Rules of Evidence.  Rule 404(b) permits the admission of "other crimes, wrongs or acts" for purposes of showing "proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Rule 404(b) is a rule of "inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition." United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir. 1982) (citation and internal quotation marks omitted); see also United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (recognizing that Rule 404(b) "is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity").

The Ninth Circuit has established a four-part test for the Court's consideration in determining whether to admit evidence under Rule 404(b):

(1) the evidence tends to prove a material point;

(2) the other act evidence is not too remote in time;

(3) the evidence is sufficient to support a finding that defendant committed the other act; and

(4) the other act is similar to the offense charged.

United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008). After analyzing the evidence through this rubric, the Court is then to examine the evidence to determine if its probative value is substantially outweighed by the danger of unfair prejudice.  See Fed. R. Evid. 403; see also United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989).

> 1. The Proffered Evidence Proves a Material Point as It Shows Defendant Kamon's Intent, Knowledge, Plan, Absence of Mistake or Accident, and Motive

Defendant Kamon's involvement in the Side Fraud Scheme is

8

directly related to his involvement in the Main Fraud Scheme.  The proffered evidence establishes elements of the charged offenses – intent and knowledge.  Namely, it shows that defendant Kamon was not an unwitting participant in the Main Fraud Scheme, who blindly transferred embezzled funds at Girardi's direction without any knowledge that client settlement funds had been stolen and without any benefit to himself.  To the contrary, evidence of the Side Fraud Scheme is relevant to prove that defendant Kamon knew and intended to participate in a similar, contemporaneous scheme to steal client money by conducting unjustified transfers of client funds from the firm's trust accounts to the operating accounts to pay for expenses, including his own personal expenses, unrelated to the clients' cases.

Evidence of the Side Fraud Scheme provides direct support for why Kamon remained in his job as head of accounting at Girardi Keese for nearly 20 years despite being on notice that settlement funds owed to clients were being misappropriated by defendant Girardi.  It was his access to the Girardi Keese bank accounts, and his surreptitious pilfering of those funds, that provided the motive and intent for him to aid defendant Girardi as charged in the indictment.

Put simply, evidence of the Side Fraud Scheme is relevant to show that Kamon did, in fact, know about the Main Fraud Scheme and stayed in his job because it enabled him to continue to embezzle funds from the firm's operating accounts to bankroll his lavish lifestyle.  Given defendant Kamon's anticipated defense that he was unaware that client funds were being misappropriated, his knowing participation in the Side Fraud Scheme is critical to rebut that notion.  Indeed, Kamon continued to transfer funds between Girardi Keese accounts at Girardi's bidding and look the other way while

clients clamored for payment of money that was due to them, while secretly skimming large sums of those client funds through side payments to various associates and girlfriends.  Defendant Kamon's willingness to engage in the Side Fraud Scheme shows that he knew that client funds were being misappropriated at Girardi Keese and took the opportunity to join in the money grab by orchestrating and directing others to assist him in conducting additional fraud.

In sum, the foregoing is directly relevant to show that defendant Kamon knowingly and intentionally participated in the Main Fraud Scheme in order to facilitate his ongoing embezzlement in the Side Fraud Scheme.

### 2.   The Evidence is Not Too Remote in Time

With respect to the second factor - the timeliness of the conduct - none of the evidence is too remote in time.  Defendant Kamon's claim that evidence of the Side Fraud Scheme is "not temporally connected to any of the embezzlement of client funds" (Motion at 12) is undercut by the very evidence that defendant cites in his Motion.  The Motion points to evidence of improper payments out of the Girardi Keese operating accounts to a female companion that took place in 2017 and 2018, checks to a construction company from 2011 to 2019, and a wire payment for a luxury car in 2020.  The government has charged Kamon as an aider and abettor to defendant Girardi in the Main Fraud Scheme that took place "as early as in or around 2010 and continu[ed] through at least in or around December 2020."  (Dkt. 1 at 4.)  By the plain language of the indictment, the Side Fraud evidence concerns defendant Kamon's conduct at or near the same time as the charged transactions.

1                 3.   <u>Defendant Committed the Other Acts</u>

2        This Court need only determine that "the jury reasonably could

3 have concluded" that the prior acts actually occurred. <u>Huddleston v.</u>

4 <u>United States</u>, 485 U.S. 681, 691 (1988). In <u>Huddleston</u>, the Court

5 expressly rejected a higher threshold, such as preponderance of the

6 evidence, as "inconsistent with the structure of the Rules of

7 Evidence and with the plain language of Rule 404(b)." <u>Id.</u> at 687.

8 Here, the government anticipates calling a summary witness who will

9 show the flow of funds related to the fraudulent Amex payment charged

10 in count five. Moreover, an additional witness will testify that

11 defendant Kamon instructed him to submit false invoices to Girardi

12 Keese for payment on services conducted at defendant's personal

13 residences that were subsequently invoiced to Girardi Keese for

14 services purportedly rendered to the law firm. The witness will also

15 identify and authenticate the fake invoices that he created at

16 defendant Kamon's direction and describe how he provided defendant

17 Kamon with millions of dollars in cash kickbacks from the Girardi

18 Keese operating account based on the fake invoices.

19        Another trial witness will testify that she met defendant Kamon

20 around 2017 through an online dating website, which connects affluent

21 older men with younger women. The witness will state that defendant

22 Kamon spent hundreds of thousands of dollars buying her jewelry,

23 clothing, and other expensive items. As part of their arrangement,

24 defendant Kamon paid her an allowance of $20,000 per month. To

25 facilitate these payments, defendant Kamon directed her to form a

26 business entity and open a bank account in the company's name.

27 Beginning in at least June 2017 and continuing through October 2018,

28 defendant Kamon caused approximately $360,000 in funds sourced from

the Girardi Keese operating account, which in turn was funded by money sourced from the firm's trust accounts as Kamon well knew, to be paid to the witness's bank account.  To justify these payments, defendant Kamon listed her as a "legal marketer" who referred cases to Girardi Keese and arranged for her to obtain health insurance through Girardi Keese, despite knowing that she never acted in such a capacity for the firm.

And finally, defendant Kamon himself admitted to his knowing and intentional participation in the Side Fraud Scheme during a proffer with the government.[2]  Thus, evidence at trial will show that defendant committed these acts.

> 4.    Defendant Kamon's Other Acts Are Similar to the Charged Offenses

Defendant Kamon's Side Fraud Scheme is similar to the charged conduct and places the charged conduct in context.  Here, the Side Fraud Scheme is similar in nature to the offenses in this case because defendant Kamon executed the Side Fraud Scheme using funds stolen from the Girardi Keese operating account, over which he had visibility and control.  As CFO and head of accounting at Girardi Keese, defendant Kamon knew that the operating account was principally fed from funds sourced from the firm's client trust accounts.  The same accounts from which defendant Girardi, assisted by defendant Kamon, embezzled millions of dollars in settlement funds as charged in the Main Fraud Scheme.

---

[2] These admissions are the subject of a forthcoming motion in limine to admit his proffer statements at trial, if certain conditions are met.

Kamon's argument that his "other acts" are "not acts of misrepresentation to clients" (Motion at 13) misses the point.  The other acts need only be similar enough to be probative of intent, that is, they "make the existence of the defendant's state of mind more probable than it would be without the evidence." United States v. Blitz, 151 F.3d 1002, 1008 (9th Cir. 1998).  The government has never alleged that Kamon lied to Girardi Keese clients.  Instead, the indictment alleges numerous lies that defendant Girardi told to clients to delay and withhold payment of their settlement funds. Kamon is charged as an aider and abettor to defendant Girardi because he was the person with access and visibility into the firm's bank accounts and accounting records and was essential to the execution of defendant Girardi's scheme to misappropriate funds.  Thus, the "other acts" at issue here are similar or related to the charged conduct and, in fact, place defendant Kamon's charged conduct within context. See United States v. Evans, 796 F.2d 264, 265 (9th Cir. 1986) (in mail fraud and embezzlement case prior conviction of false statements and mail and securities fraud was admissible under Fed. R. Evid. 404(b) in part because "the intent required in the prior crimes was similar to the intent required under the present charges").

   5.   There is No Unfair Prejudice as Defined by Rule 403

The proffered evidence is not unfairly prejudicial.  Prejudice is only "unfair" if it "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982).  The evidence is highly probative of defendant Kamon's motive, knowledge, and intent and does not have the tendency

13

to provoke an emotional response in a significant way that would warrant precluding the evidence at trial.

Moreover, any prejudicial impact is limited by the jury's own ability to gauge the credibility of the witnesses.  In addition, the government will propose a limiting instruction regarding the significance of the evidence, including its applicability only to defendant Kamon.  See United States v. Khan, 993 F.2d 1368, 1377-78 (9th Cir. 1993).  Defendant's claim that this evidence is a "side show" is undercut by the above arguments.  The government, as it has maintained throughout this case, intends to present a streamlined case-in-chief and, to that end, has noticed only two witnesses on this subject matter and will present a limited subset of evidence regarding the Side Fraud Scheme.  Thus, the significant probative value of this evidence is not outweighed, much less substantially outweighed, by any danger of unfair prejudice or undue delay.

//

**III.  CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this Court deny defendant Kamon's motion in its entirety.


 Dated: June 3, 2024                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        SCOTT PAETTY
                                        ALI MOGHADDAS
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

The undersigned, counsel of record for the United States of America, certifies that this brief contains 3,805 words, which complies with the word limit of L.R. 11-6.1."

Dated: June 3, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       SCOTT PAETTY
                                       ALI MOGHADDAS
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA