CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-47-JLS-1 |
| Plaintiff, | **THOMAS GIRARDI'S OPPOSITION TO CHRISTOPHER KAMON'S MOTION TO EXCLUDE OTHER ACTS EVIDENCE** |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

## TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ....................................................................................... 1

II.    ARGUMENT .............................................................................................. 5

       A.    The court should deny Kamon's motion on procedural grounds
             because he failed to meet and confer. .................................................. 5

       B.    In addition to denying Kamon's motion on procedural grounds,
             the Court should also deny it on the merits. ...................................... 6

             1.    Girardi should be allowed to present the challenged evidence
                   without reference to an ill-fitting Rule 404(b) analysis tied
                   to the Indictment. ...................................................................... 6

             2.    Even under a conventional 404(b) analysis, the challenged
                   evidence is admissible for multiple reasons. .............................. 9

                   a.    The challenged evidence is part of the charged scheme
                         or, at a minimum, part of the same alleged criminal
                         transaction. ...................................................................... 10

                   b.    The challenged evidence is part of the res gestae. .......... 11

                   c.    Even if the challenged evidence were not part of the
                         charged scheme and extrinsic, it is admissible for
                         multiple 404(b) purposes. ............................................... 13

                   d.    While the challenged evidence may tend to exculpate
                         Girardi at Kamon's expense, that does not make it
                         "unfairly" prejudicial. ..................................................... 19

             3.    The Court should disregard any new arguments offered
                   in the Reply. ............................................................................ 21

III.   CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

PAGE(S)

**Federal Cases**

Aycock v. R.J. Reynolds Tobacco Co.,
    769 F.3d 1063 (11th Cir. 2014) ................................................................... 19

Calco v. Ossur Americas, Inc.,
    2024 WL 694369 (C.D. Cal. Jan. 19, 2024) ................................................. 5

Caldera v. J.M. Smucker Co.,
    2013 WL 6987905 (C.D. Cal. June 3, 2013) ................................................. 5

Cerelux Ltd. v. Yue Shao,
    2017 WL 4769459 (C.D. Cal. June 9, 2017) .............................................. 5, 6

Chambers v. Mississippi,
    410 U.S. 284 (1973) ................................................................................ 7, 21

Crane v. Kentucky,
    476 U.S. 683 (1986) .................................................................................. 2, 7

Daubert v. Merrell Dow Pharms., Inc.,
    509 U.S. 579 (1993) ..................................................................................... 14

Dortch v. Fowler,
    588 F.3d 396 (6th Cir. 2009) ...................................................................... 14

Elliot v. Turner Const. Co.,
    381 F.3d 995 (10th Cir. 2004) ...................................................................... 7

James R. Glidewell Dental Ceramics, Inc. v. Philadelphia Indem. Ins. Co.,
    2016 WL 9223782 (C.D. Cal. Sept. 12, 2016) ............................................ 5

Lunbery v. Hornbeak,
    605 F.3d 754 (9th Cir. 2010) ........................................................................ 2

Messick v. Novartis Pharms. Corp.,
    747 F.3d 1193 (9th Cir. 2014) .................................................................... 14

Old Chief v. United States,
    519 U.S. 172 (1997) ................................................................................... 12

Pennsylvania v. Ritchie,
    480 U.S. 39 (1987) .................................................................................... 2, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

## TABLE OF AUTHORITIES

PAGE(S)

R.H. v. Cnty. of San Bernardino,
  2019 WL 10744836 (C.D. Cal. Sept. 25, 2019) ............................................. 3

United States v. Aboumoussallem,
  726 F.2d 906 (2nd Cir.1984) .................................................................. 9, 15

United States v. Aleman,
  592 F.2d 881 (5th Cir. 1979) ..................................................................... 11

United States v. Bahamonde,
  445 F.3d 1225 (9th Cir. 2006) ..................................................................... 8

United States v. Beckman,
  298 F.3d 788 (9th Cir. 2002) ..................................................................... 12

United States v. Booth,
  2012 WL 3881001 (D. Nev. Sept. 6, 2012) ................................................. 5

United States v. Churn,
  800 F.3d 768 (6th Cir. 2015) ..................................................................... 12

United States v. Crenshaw,
  698 F.2d 1060 (9th Cir. 1983) ................................................................... 21

United States v. Crosby,
  75 F.3d 1343 (9th Cir. 1996) ....................................................................... 1

United States v. Cruz-Garcia,
  344 F.3d 951 (9th Cir. 2003) ............................................... 14, 15, 17, 20

United States v. Daly,
  974 F.2d 1215 (9th Cir. 1992) ............................................................. 12, 13

United States v. Danielson,
  325 F.3d 1054 (9th Cir. 2003) ..................................................................... 4

United States v. Dorsey,
  677 F.3d 944 (9th Cir. 2012) ................................................................. 4, 12

United States v. Haischer,
  780 F.3d 1277 (9th Cir. 2015) ............................................................. 20, 21

United States v. Kupfer,
  797 F.3d 1233 (10th Cir. 2015) ................................................................. 12

iii

# TABLE OF AUTHORITIES

PAGE(S)

United States v. Leonard-Allen,
  739 F.3d 948 (7th Cir. 2013) ................................................................ 14

United States v. Loftis,
  843 F.3d 1173 (9th Cir. 2016) .......................................................... 3, 6, 10

United States v. McCourt,
  925 F.2d 1229 (9th Cir. 1991) ............................................................ 9, 15

United States v. Miranda-Uriarte,
  649 F.2d 1345 (9th Cir. 1981) ............................................................... 14

United States v. Munoz,
  36 F.3d 1229 (1st Cir. 1994) ................................................................. 20

United States v. Sayakhom,
  186 F.3d 928 (9th Cir. 1999) ................................................................ 11

United States v. Sneezer,
  983 F.2d 920 (9th Cir. 1992) ................................................................ 14

United States v. Soliman,
  813 F.2d 277 (9th Cir. 1987) ............................................................ 11, 12

United States v. Stevens,
  935 F.2d 1380 (3d Cir. 1991) ............................................................... 16

United States v. Vallejo,
  237 F.3d 1008 (9th Cir.) ........................................................................ 2

United States v. Vo,
  413 F.3d 1010 (9th Cir. 2005) ............................................................... 19

United States v. Whitman,
  771 F.2d 1348 (9th Cir. 1985) ............................................................... 21

United States v. Whittington,
  455 F.3d 736 (6th Cir. 2006) ................................................................ 14

United States v. Wright,
  625 F.3d 583 (9th Cir. 2010) ........................................................... passim

Wardius v. Oregon,
  412 U.S. 470 (1973) ............................................................................... 8

iv

# TABLE OF AUTHORITIES

PAGE(S)

Whitehead v. Bond,
    680 F.3d 919 (7th Cir. 2012) ........................................................... 19

Wild v. HarperCollins Publishers LLC,
    2013 WL 12137684 (C.D. Cal. Jan. 2, 2013) .............................. 22

**Federal Rules**

CACD L.R. 7-3 ................................................................................. 5

Fed. R. Civ. P. 7 .............................................................................. 7

Fed. R. Civ. P. 14 ............................................................................ 7

Fed. R. Civ. P. 22 ............................................................................ 7

Fed. R. Evid. 401 ...................................................................... 14, 21

Fed. R. Evid. 402 ...................................................................... 14, 21

Fed. R. Evid. 403 .................................................................. 19, 20, 21

Fed. R. Evid. 404 ................................................................... passim

# I.  **INTRODUCTION**

During the 10-year scheme period charged in this case, Chris Kamon, Girardi Keese ("GK")'s CFO, embezzled tens of millions of dollars from the firm through multiple frauds, some sophisticated and some brazenly simple.  Kamon concealed those thefts from Tom Girardi by cooking the books, destroying and manipulating evidence, lying and enlisting others to lie, and consolidating control over the firm's financial operations to the point where, as the government rightly put it, he "enjoyed unfettered access to GK accounts with virtually no oversight."  See United States v. Kamon; CR-23-24-JLS, Docket No. 17 at 5:17-20.  Whether taken directly from the trust account or from operating accounts funded by the trust account, see id. at 5:11-14; United States v. Kamon; CR-21-24-JLS, Docket No. 1 ("Kamon Complaint") ¶¶ 11-12, all of this money ultimately came from client recoveries.

Evidence of Kamon's secret thefts, carried out as Girardi's cognitive decline left him unaware of the most basic happenings at the firm, is essential to Girardi's defense that he did not commit the crimes charged in this case.  Indeed, this evidence, which is supported by multiple witnesses and replete documentation, will be offered to prove Girardi's own lack of knowledge and intent (elements of the crime), to rebut claims that he directed the charged conduct (the government's theory), and to establish Kamon's opportunity, motive, and plan for improperly diverting the charged client funds.  Not only is this evidence inarguably admissible, stripped of the ability to present it, Girardi would be effectively disabled from answering the question that any jury will need answered: if Girardi is innocent, who is responsible for the missing money?

The Ninth Circuit has repeatedly reversed convictions where courts have excluded similar evidence, explaining that: "[i]f the evidence that someone else committed the crime is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.  United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir. 1996) (cleaned up, emph. added, reversing

conviction); <u>United States v. Vallejo</u>, 237 F.3d 1008, 1023-24 (9th Cir.), <u>opinion amended on denial of reh'g,</u> 246 F.3d 1150 (9th Cir. 2001) (same).  Preventing Girardi from presenting evidence of Kamon's secret frauds would not just be evidentiary error, but an error of Constitutional dimension.  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense"); <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 56 (1987) ("[C]riminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt"); <u>Lunbery v. Hornbeak</u>, 605 F.3d 754, 760 (9th Cir. 2010) ("[The] constitutional right [to present a defense] is violated by the exclusion of probative admissible evidence that another person may have committed the crime").

Acknowledging none of these Girardi-specific issues, Kamon's motion seeks to exclude from a presently-joint trial evidence tending to exculpate Girardi on the basis that admitting it would somehow violate Rule 404(b).  For multiple reasons, the Court should deny Kamon's ill-taken motion.

Initially, and notwithstanding a line inserted post-hoc in an amended motion, Kamon did not engage in a prefiling meet and confer with the government or Girardi even though he knew that both parties would oppose.[1]  While Girardi does not invoke the meet-and-confer rule reflexively, Kamon's unilateral action, seemingly calculated to obtain a tactical advantage by compressing the briefing schedule and catching the parties off guard, has prejudiced Girardi.  It has also generated piecemeal, illogically-

---

[1] After filing the amended motion without identifying the changes, Kamon's counsel represented that the new motion added only a certificate of compliance.  Ex. 1. In fact, the new filing adds: "Counsel have previously conferred and all are aware of the substance of the instant motion."  <u>Compare</u> Docket No. 189 at 2:12-14 <u>with</u> Docket No. 191 at 2:12-16.  To say that the parties are generally aware of an issue in dispute and to say that they have meaningfully met and conferred are two different things. While this carefully-worded line, added after Girardi filed an <u>ex parte</u> application noting Kamon's failure to meet and confer, seems calculated to suggest that the parties met and conferred, both Girardi and the government agree that they did not.  <u>See</u> Ex. 2.

2

sequenced litigation that would have the Court hear an evidentiary motion with lurking Constitutional and severance implications the day before the long-scheduled filing of a severance motion in which those implications will be made explicit.  See Docket No. 190.  Under these circumstances, the Court should deny the motion on procedural grounds.  See, e.g., R.H. v. Cnty. of San Bernardino, No. 5:18-CV-1232-JLS-KK, 2019 WL 10744836 (C.D. Cal. Sept. 25, 2019) (striking MSJ).

The Court should also deny the motion on the merits.  The basic conceit of Kamon's motion – that the challenged evidence is "other acts" subject to Rule 404(b) – is simply wrong.  The evidence that Kamon seeks to exclude goes to the heart of a defense that Girardi has a Constitutional right to present.  It also involves the same conduct, perpetrated in the same way, in the same location, involving the same accounts, during the same time period, as the 10-year scheme charged in the Indictment.  Indeed, even while grossly misstating the facts,[2] Kamon tacitly acknowledges that he is seeking to preclude truthful evidence not just relevant to the scheme, which itself makes the evidence intrinsic in a conventional 404(b) analysis, but to one of the counts in the Indictment.  Mot'n at 8:26-9:14.  That Kamon does not want a jury to see this evidence does not make it "other acts" subject to Rule 404(b).  United States v. Loftis, 843 F.3d 1173, 1177 (9th Cir. 2016).

---

[2] For example, Kamon's motion cites invoices (that Kamon told Isidro Bravo to fabricate, Ex. 4) in order to support his factual claim that the payments to Bravo lasted only "between 2011 and 2015, with a few in 2020." Mot'n at 9:28-10:2.  This is false.  As reflected in the General Ledger prepared by the GK bankruptcy trustee, for just the seven-year lookback period between December 2013 and December 2020, Kamon made 1,084 payments totaling roughly $6.5 million to Isidro Bravo and his sham company, Bravo's Construction.  See Ex. 5.  These payments – which Kamon falsely booked as "Girardi draw[s]," "case costs," "repairs and maintenance," "leasehold improvements," and the like – were made continuously from December 2013 through 2020, with payments only slowing in 2020 as GK's finances started to falter, but still continuing through September 2020.  (And this was just one of many schemes Kamon was running through the firm's books and accounts without Girardi's knowledge during the 10-year period charged in this case.)

3

The challenged evidence is also exempt from Rule 404(b) because it is essential to Girardi's ability to tell a "coherent and comprehensible" story about why he is not guilty of the crimes charged in the Indictment.  See United States v. Dorsey, 677 F.3d 944, 951-52 (9th Cir. 2012) (evidence is not subject to Rule 404(b) when it "bears directly on the . . . charge[s]" and is "necessary . . . to permit [a party] to offer a coherent and comprehensible story regarding the [charged offense]") (everything omitted).  While Girardi has a Constitutional right not to disclose his defense before trial, United States v. Danielson, 325 F.3d 1054, 1066 (9th Cir. 2003), the relevance of this evidence needs little explication.  Girardi intends to show that, during the scheme period, as he was losing his mental faculties, his secretive and deceptive CFO, operating with "virtually no oversight," was stealing tens of millions of dollars from the firm, and ultimately the firm's trust accounts (Kamon Complaint ¶¶ 11-12), while shuffling money within and outside the firm without Girardi's knowledge.  The evidence that Kamon seeks to exclude is thus as inextricably intertwined with the charged scheme, and Girardi's defense to that scheme, as any evidence can possibly be.

Finally, even were the challenged evidence erroneously considered "other acts" subject to a Rule 404(b)(2) analysis, it would still be admissible for multiple reasons. Girardi's purpose in presenting Kamon-related evidence is to disprove his own knowledge and intent, see Fed. R. Evid. 404(b)(2), to directly rebut the claim made in the Indictment that he engaged in a joint criminal plan with Kamon, see Indictment ¶¶ 2, 3.c-f., and to establish Kamon's opportunity and motive for misusing client settlement money without his authorization, Fed. R. Evid. 404(b)(2).  These are textbook 404(b) purposes which, in this case, coincide with Girardi's Constitutional right to defend himself.

To be clear: the government is seeking to put Girardi in prison for the rest of his life based on an allegation that he knowingly participated in a fraud scheme with Kamon while intending to deceive and cheat.  Evidence of Kamon's concealed frauds

4

during the same time period while in the same role responds directly, persuasively, and truthfully to the charges in the Indictment.  Girardi's has every right to defend himself with this evidence, and must be afforded the broadest possible latitude to do so at trial.

The motion should be denied.

## II.  ARGUMENT[3]

**A. The court should deny Kamon's motion on procedural grounds because he failed to meet and confer.**

The Court's Standing Order, like the Local Rules, requires adverse parties to substantively confer about motions before filing.  Criminal Standing Order ¶ 1.  This requirement is not "just a piece of petty pedantry put down to trip up lawyers or mere formalism simply there for lawyers to check off." Calco v. Ossur Americas, Inc., No. SA-CV-22-01971-CJC(KESx), 2024 WL 694369, at *1 (C.D. Cal. Jan. 19, 2024) (discussing C.D. Cal. L.R. 7-3).  Meet-and confer requirements allow "for a possible informal resolution of an issue without court intervention," and enable "the parties to brief the remaining disputes in a thoughtful, concise, and useful manner." Caldera v. J.M. Smucker Co., No. CV 12-4936-GHK(VBKx), 2013 WL 6987905, at *1 (C.D. Cal. June 3, 2013) (everything omitted).  They also serve "the important purpose of providing the opposing party sufficient notice as to the contents of a proposed motion and an opportunity to negotiate on the hearing date," which "allows for the preparation of an adequate response given the otherwise short briefing schedule for motions provided for by the Local Rules." Cerelux Ltd. v. Yue Shao, No. CV-17-02909-MW(FKSx), 2017 WL 4769459, at *1 (C.D. Cal. June 9, 2017).  Presumably for these reasons, this Court has consistently rejected even dispositive motions filed in violation of meet-and confer rules. E.g., James R. Glidewell Dental Ceramics, Inc. v.

---

[3] While Girardi believes that the information available to the Court is more than sufficient to deny this motion outright, he notes that the standard for excluding evidence pretrial through in limine motions is particularly high.  See United States v. Booth, No. 2:08-CR-00283-RCJ, 2012 WL 3881001, at *1 (D. Nev. Sept. 6, 2012).

1  Philadelphia Indem. Ins. Co., No. 8:16-CV-01155-JLS(Ex), 2016 WL 9223782, at *1

2  (C.D. Cal. Sept. 12, 2016) (striking MSJ).

3         In this case, Kamon filed his in limine motion, which he presumably spent

4  substantial time preparing, without prior notice or discussing it with the adverse parties.

5  See Ex. 2.  Not only did his filing violate the Court's Standing Order, it violated the

6  principles of judicial economy and procedural fairness animating the meet-and-confer

7  requirement.  As to the former, the motion asks the Court illogically to decide an

8  evidentiary issue with lurking Constitutional and severance implications the day before

9  the parties' jointly-negotiated motions deadline, on which Girardi has made clear he

10  intends to seek severance.  See Docket No. 190.  As to the latter, it seems clear that

11  Kamon sought to gain a tactical advantage by filing an early evidentiary motion

12  without notice and refusing to modify the schedule in any way, thereby impeding "the

13  preparation of an adequate response given the otherwise short briefing schedule for

14  motions provided for by the Local Rules."  Cerelux, 2017 WL 4769459, at *1.

15        The net result is a thoughtless and piecemeal schedule, a rushed set of filings in

16  response to a motion that misstates the facts and does not helpfully frame the issues,

17  and a redundant waste of Court and party resources as the overlapping question of

18  severance is set to be briefed shortly after the now-scheduled hearing.  Because

19  Kamon's failure to meet and confer violated both the letter and spirit of the meet-and-

20  confer requirement, the Court should reject the motion on procedural grounds.

**B. In addition to denying Kamon's motion on procedural grounds, the Court should also deny it on the merits.**

**1. Girardi should be allowed to present the challenged evidence without reference to an ill-fitting Rule 404(b) analysis tied to the Indictment.**

24        As a threshold matter, the conventional 404(b) analysis in a criminal case –

25  which was developed for situations where the government is the evidentiary proponent

26  – should not be used to evaluate Girardi's ability to admit the challenged evidence over

27  a 404(b) objection.  Under that analysis, the first two questions ask whether the

28

6

challenged evidence is encompassed by the proponent's pleading or, if not, whether it is inextricably intertwined with the conduct alleged in the pleading.  See Loftis, 843 F.3d at 1177.  If the answer to either question is yes, the evidence is considered "intrinsic" to the case and Rule 404(b) simply does not apply.  Id.

While this framework is well-established and makes sense where the government is the evidentiary proponent, it is not established and makes no sense where it is the defendant seeking to introduce the challenged evidence.  This is because the first two steps of the 404(b) analysis – especially the first – are tied to the case framed by the proponent's pleadings.  Yet while the government has a case framed by an Indictment, the defense also has a case for which there is no available pleading.  Without a defense pleading, there is no way under the conventional 404(b) analysis to measure whether the evidence is intrinsic or extrinsic to the defense case.  But, of course, it would make no logical sense to conduct the intrinsic/extrinsic analysis in light of the Indictment, which sets out the government's case, rather than in light of the case advanced by the defense, i.e., the evidentiary proponent.

Indeed, this approach would be especially nonsensical because, unlike virtually all other litigants, criminal defendants have a broad and unique Constitutional right to present a "complete defense," Crane, 476 U.S. at 690, including to "put before a jury evidence that might influence the determination of guilt," Ritchie, 480 U.S. at 56; Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  At the same time, they have effectively no opportunity (or obligation) to plead claims and defenses.  As a result, under the conventional analysis, criminal defendants, unlike nearly every other litigant, have no ability to make evidence intrinsic to their case.  A conventional 404(b) analysis tied strictly to the pleadings would thus have the absurd effect of uniquely disadvantaging a criminal defendant as compared to every other litigant – including civil litigants who, like the government, can make evidence intrinsic and exempt from Rule 404(b) by filing Complaints, Answers, Counterclaims, and Third-Party

7

Complaints.  See, e.g., Fed. R. Civ. P. 7, 14, 14, 22; Elliot v. Turner Const. Co., 381 F.3d 995, 1004 (10th Cir. 2004) (in civil case, conducting step-one analysis with reference to the Complaint: "Rule 404(b) is inapplicable here because the evidence at issue was directly related to Elliot's negligence claim against B & C and was offered to prove the central theory of plaintiff's case").

That result, and conventional analytical approach, simply cannot be right where the defendant, rather than the government, is the proponent.[4]  Instead, as a matter of logic and fairness, the first question in this setting should not be whether the challenged evidence is encompassed by the Indictment, but whether it is encompassed by a valid defense tied to the charges.  If the answer to that question is yes, Rule 404(b) should not apply at all because the evidence is intrinsic and does not involve "other acts."

As applied here, that approach would lead to a straightforward result consistent with Girardi's Constitutional right to present a defense.  This is an embezzlement prosecution where the government alleges that Girardi knowingly participated in a scheme with Kamon to divert client money from GK's accounts for improper purposes. The essential trial question is going to be whether the government can prove beyond a reasonable doubt that Girardi participated in the scheme with the requisite knowledge and intent.  Evidence that, during the exact same time period, while working in the exact same role, while using the exact same financial accounts (because the trust account funded the operating accounts), while using the exact same "unfettered access to GK accounts with virtually no oversight," Kamon was secretly taking tens of millions of dollars from the firm, moving money around at will, and lying to and concealing all of this from Girardi, is not just relevant, but entirely bound up with the

---

[4] Controlling authority has long recognized the principle that defendants are at least entitled to a measure of parity when it comes to discovery and the presentation of evidence, and that making defendants jump through additional hoops not applicable to the government violates due process.  See Wardius v. Oregon, 412 U.S. 470, 474-75 (1973); United States v. Bahamonde, 445 F.3d 1225, 1229 (9th Cir. 2006).

charges and essential to any mental-state defense.

As far as Girardi is concerned, that should be the end of the issue.  He has a Constitutional right to present this evidence regardless of whether the government charged Kamon in one Indictment, two Indictments, or not at all.  From his perspective – for his case – the evidence is not "other acts," but simply relevant, truthful, factually-interwoven evidence that supports a defense directly responsive to the elements of the charged crimes.  Because the challenged evidence is bound up with the charges and relevant to a valid defense, it should be treated as intrinsic, as it would be for other litigants, and Girardi should not be required to further justify it under an inapt framework tied to the Indictment.[5]

**2. Under a conventional 404(b) analysis, the challenged evidence is admissible for multiple reasons.**

Even if analyzed under a conventional Rule 404(b) approach, however, the challenged evidence is admissible for multiple reasons: (1) it is part of the charged

---

[5] In United States v. McCourt, 925 F.2d 1229 (9th Cir. 1991), the Ninth Circuit rejected the argument that defendants should be entitled to present pure propensity evidence irrespective of Rule 404(b), holding instead that the Rule applies to criminal defendants, like other litigants, albeit in a more lenient form, id. at 1236.  See also United States v. Wright, 625 F.3d 583, 608 (9th Cir. 2010) ("'[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword'") (quoting United States v. Aboumoussallem, 726 F.2d 906, 911 (2nd Cir.1984) (discussed with approval in McCourt, 925 F.2d at 1234)), superseded by statute on other grounds.  Neither McCourt nor, to Girardi's knowledge, any other Ninth Circuit case has addressed the argument above: that, if 404(b) applies to the defense, that application should logically involve a similar analytical framework as with other proponents tied to the defense case.  While not addressed, the logic of McCourt and the cases that it cites is certainly consistent with this conclusion, and inconsistent with any framework that uniquely disadvantages criminal defendants seeking to admit evidence over a 404(b) challenge.  See, e.g., Aboumoussallem, 726 F.2d at 911-12 ("[W]hen the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense . . . the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense") (everything omitted).

scheme or, at a minimum, part of the same alleged criminal transaction, (2) it is inextricably intertwined with the charges and the defense, and (3) it satisfies Rule 404(b)(2) many times over.  Indeed, while Girardi and the government agree on little substantive in this case, on this point, they are largely in accord.

### a. The challenged evidence is part of the charged scheme or, at a minimum, part of the same alleged criminal transaction.

"Rule 404(b) applies solely to evidence of 'other' acts, not to evidence of the very acts charged as crimes in the indictment." Loftis, 843 F.3d at 1176.  As a result, and as mentioned above, the first 404(b) question is whether the challenged evidence is encompassed by the Indictment.  See id at 1177.  This question has special relevance for conspiracy and scheme offenses, which, by their nature, sweep broadly and include conduct not explicitly identified in the Indictment.  Id. at 1176.

Where the challenged evidence is part of the overarching scheme or "conspiracy alleged in the indictment, the evidence is admissible [without regard to] Rule 404(b) because it is not an 'other' crime." Id. (quoting 22B Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 (1st ed. 2016)).  In other words, "[t]he evidence is offered as direct evidence of the [crime] in issue, not as circumstantial evidence requiring an inference as to the character of the accused." Id (everything omitted).  "Rule 404(b) thus does not preclude the government from introducing evidence of uncharged transactions to prove . . . the existence of a scheme to defraud." Id. at 1177.

Here, Kamon himself tacitly acknowledges that he is seeking to preclude truthful evidence not just relevant to the charged scheme, but to one of the counts in the Indictment.  Mot'n at 8:26-9:14.  Although he contends that this is somehow insufficient to end the inquiry, he is wrong.  Loftis, 843 F.3d at 1177.  As an initial matter, therefore, "the evidence is admissible under Rule 404(b) because it is" part of the charges in this case and "not an 'other' crime." Id. at 1176.

Further, even were the challenged evidence found not technically to be part of the charged offense, it is nonetheless part of the same basic criminal transaction, and

thus admissible without further Rule 404(b) scrutiny.  See Loftis, 843 F.3d at 1178 (explaining that "uncharged transactions that are [factually] part of [the same] overall scheme . . . as the charged transactions" are intrinsic and admissible without further 404(b) scrutiny); Kamon Complaint ¶¶ 6, 11-32 (explaining how, during the scheme period charged in the Indictment Kamon secretly used money taken from GK's client trust accounts for his own personal purposes, including to pay Bravo and Nicole Rokita, as part of an overarching scheme).  Indeed, as the Fifth Circuit explained in language often quoted by the Ninth:

> The policies underlying [Rule 404(b)] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions.  If a person breaks into a house, murders the occupants, and steals a television set, the individual offenses do not become "wholly separate and independent crimes" merely because they are made the subjects of separate indictments.

United States v. Aleman, 592 F.2d 881, 885 (5th Cir. 1979) (quoted with approval in United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) (holding, in mail-fraud prosecution, where defendant "was indicted for 'less than all of his actions'" and "[another coschemer's unindicted] mail fraud activities were closely intertwined with [the defendant's] activities," that evidence was part of the same transaction and thus admissible without further 404(b) scrutiny)).  Bottom line, whether considered part of the charged scheme or an uncharged part of the same criminal transaction, the correct result is the same: the challenged evidence is intrinsic and beyond the scope of 404(b).  See United States v. Sayakhom, 186 F.3d 928, 938 (9th Cir. 1999) (where two fraud schemes were different but related to each other and only one was charged in the Indictment, evidence of the second scheme was intrinsic and admissible without further Rule 404(b) scrutiny because it was part of the same overarching criminal transaction).[6]

---

[6] The government, of course, could have charged all of Kamon's conduct as a single overarching scheme or conspiracy while alleging that Girardi participated in some parts but not others, which is something that it frequently does.  That the

11

### b.  The challenged evidence is part of the <u>res</u> <u>gestae</u>.

The challenged evidence is also admissible because it is inextricably intertwined with the charged conduct and Girardi's defense.  The inextricably-intertwined doctrine permits parties to admit evidence of other bad acts where, among other things, the evidence is necessary "to permit the [party] to offer a coherent and comprehensible story" regarding the charge or defense.  <u>Dorsey</u>, 677 F.3d at 951.  Sometimes referred to as the "<u>res gestae</u>" principle, this rule recognizes that trials are not abstract factual recitations, stripped of context, but evidentiary stories with a need for "narrative integrity[.]"  <u>Old Chief v. United States</u>, 519 U.S. 172, 183 (1997); <u>United States v. Daly</u>, 974 F.2d 1215, 1217 (9th Cir. 1992).  "Evidence is considered intrinsic [under this rule] when it is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury," such as where it "occurred within the same time frame as the activity in the conspiracy being charged, was a necessary preliminary to the charged conspiracy, provided direct proof of the defendant's involvement with the charged crimes, was entirely germane background information directly connected to the factual circumstances of the crime, [or] was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice."  <u>United States v. Kupfer</u>, 797 F.3d 1233, 1238 (10th Cir. 2015) (cleaned up, everything omitted); <u>Daly</u>, 974 F.2d 1215, 1217; <u>United States v. Beckman</u>, 298 F.3d 788, 794 (9th Cir. 2002).  As with charged conduct, where evidence is inextricably intertwined, it is simply part of the case and not subject to Rule 404(b).  <u>Soliman</u>, 813 F.2d at 279 ("Evidence should not be treated as 'other crimes' evidence when the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined") (cleaned up).

Again, as discussed above, the challenged evidence is not extrinsic to the charged

---

government made a different tactical choice to Indict Kamon in this case for less than all of his scheme activity does not change the overall nature of the transaction.

conduct, but simply truthful contemporaneous evidence necessary for Girardi to tell a "coherent and comprehensible" story about why he is not guilty of the crimes in the Indictment. It is thus not other acts, but part of the res gestae and not subject to Rule 404(b). Cf. United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015) (in bank fraud prosecution, testimony about a real-estate deal that did not underlie defendant's charged offenses was res gestae because it was "closely related in both time and nature to the crime charged"); Daly, 974 F.2d at 1217 ("[E]vidence concerning other acts that are inextricably intertwined with the charged acts may be admitted" to "put [defendant's] illegal conduct into context and to rebut his [defense]").[7]

---

[7] At times it appears that Kamon seeks to falsely suggest that there was some sort of firewall between GK's trust and operating accounts, making his activity in the latter irrelevant and unconnected to the former. This is untrue. As an initial matter, because GK was a contingency-fee plaintiff's firm, its legitimate revenues, which funded the operating accounts, were fees and expenses deposited first in the trust account before being drawn into the operating account. Thus, mechanically, the trust accounts necessarily funded the operating accounts, and theft from the operating accounts was ultimately money taken originally from the trust accounts. Further, even if, in theory, Girardi had to sign off on transfers from the trust to the operating accounts, it was Kamon who kept the trust ledger and told Girardi on which cases the firm was supposedly owed money. Given that Kamon was stealing tens of millions of dollars from the firm for his own benefit, and given that that money had to come from somewhere – in this case the trust account – the connection between his fraud in the operating account and any embezzlement from the trust account is, frankly, so inarguable that even Girardi and the government agree. See Docket No. 191-1, Gov't 404(b) Notice at 2 ("Kamon knowingly and intentionally participated in the overall scheme in order to facilitate his ongoing embezzlement in the side fraud"). In addition, as the trial evidence will undoubtedly show, GK's financial controls were poor, and Kamon was often moving money around at will, including client trust funds, over the course of the scheme period, during which he consistently misled Girardi about his activities. While Kamon is certainly entitled to pursue a theory that his criminality was limited to the operating accounts and, contrary to all evidence and common sense, he was scrupulously compliant, honest, and would never mislead Girardi in any way when it came to the trust accounts (which funded the operating accounts from which he was secretly stealing tens of millions of dollars), that does not make the challenged evidence

### c.  Even if the challenged evidence were not part of the charged scheme and extrinsic, it is admissible for multiple 404(b) purposes.

Finally, even if erroneously considered "other acts," the challenged evidence is inarguably admissible under Rule 404(b)(2).  "The Federal Rules of Evidence start from the proposition that '[a]ll relevant evidence is admissible.'"  United States v. Cruz-Garcia, 344 F.3d 951, 954 (9th Cir. 2003) (quoting Fed. R. Evid. 402).  Evidence is relevant if it has "any tendency to make . . . a fact of consequence" – like Girardi's knowledge, intent, or joint participation in the charged scheme with Kamon – "more or less probable than it would be without the evidence."  Fed. R. Evid. 401 (emph. added). The Supreme Court has labeled this standard "liberal," Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 587 (1993), the Ninth Circuit has called it "low," Messick v. Novartis Pharms. Corp., 747 F.3d 1193, 1196 (9th Cir. 2014), and "not strict," United States v. Miranda-Uriarte, 649 F.2d 1345, 1353 (9th Cir. 1981), and treatises have described it as a "low threshold" based on a liberal policy of "broad admissibility," Mueller & Kirkpatrick, Evidence §§ 4.1, 4.2 (3d ed. 2003).  Further, a piece of evidence does not have to be decisive to be relevant; it just has to marginally "advance the ball," either alone or in combination with other evidence.  Dortch v. Fowler, 588 F.3d 396, 401 (6th Cir. 2009); United States v. Whittington, 455 F.3d 736, 738-39 (6th Cir. 2006) (emph. in orig.) ("[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth"); United States v. Leonard-Allen, 739 F.3d 948, 956 (7th Cir. 2013) ("The word 'any' signals that evidence is relevant even if it only slightly or marginally alters the likelihood of a consequential fact").

Against this backdrop, Rule 404(b) makes a limited exception "for 'evidence of other crimes, wrongs, or acts' where that evidence 'proves only criminal disposition.'"

---

extrinsic from the charged crime, let alone inadmissible at trial.  (It is also somewhat hard to square with Kamon's own admissions in government proffers about concealing trust activity from Girardi and being in possession of trust checks signed in blank,)

14

1   Cruz-Garcia, 344 F.3d at 954 (cleaned up, emph. in orig.).  Like Rule 402, however,

2   Rule 404(b) is ultimately a rule "'of inclusion,'" rather than exclusion.  Id. (everything

3   omitted).   Even where the government seeks to admit other-act evidence against the

4   defendant on trial, the evidence is inadmissible "only when it proves nothing but the

5   defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th

6   Cir. 1992) (emph. added, cleaned up).

7          The rule is even more permissive where, rather than the government, the

8   defendant is the evidentiary proponent.  "[T]he standard of admissibility when a

9   criminal defendant offers similar acts evidence as a shield need not be as restrictive as

10  when a prosecutor uses such evidence as a sword." Wright, 625 F.3d at 608 (quoting

11  Aboumoussallem, 726 F.2d at 911).  Rather, consistent with the Constitution, "courts

12  should indulge the accused when the defendant seeks to offer [other acts] evidence of a

13  third person for an issue pertinent to the defense other than propensity." McCourt, 925

14  F.2d at 1236.  If the evidence is in any way "relevant to the existence or non-existence

15  of some fact pertinent to the defense," Aboumoussallem, 726 F.2d at 912, and not being

16  offered purely as extrinsic propensity evidence, it must be admitted consistent with a

17  defendant's Constitutional right to self-defense.

18         Here, the challenged evidence is being offered for multiple permissible purposes

19  listed directly in Rule 404(b)(2), a list which itself "is illustrative, not exhaustive."

20  Cruz-Garcia, 344 F.3d at 955.  First, as discussed above, the evidence is principally

21  being offered not to prove anything about Kamon at all; instead, it is being offered to

22  disprove Girardi's own "knowledge" and "intent," which are elements of the crime, by

23  showing that Kamon was engaging in secret activity involving the same accounts,

24  during the same time period, in the same role without Girardi's knowledge or

25  participation.  Second, by showing that Kamon was acting autonomously during the

26  key time periods through his "unfettered access to GK accounts with virtually no

27  oversight," the evidence is being offered to rebut the government's theory that Girardi

28

was directing his alleged coschemer Kamon as part of a common "plan" to engage in the charged embezzlements; it is also being offered to rebut the contention, which it is clear that the government intends to make at trial based on the Indictment and witness interviews, that Girardi was knowledgeable about and calling the shots for the firm's significant financial activity, including all of the activity related to its trust accounts. See Indictment ¶¶ 3.c-f.  Third, the evidence is being offered to show that Kamon had the "opportunity" to secretly misuse the accounts – because he was doing it throughout the scheme period – and that, both before and after Kamon's house of cards began to fall, he had the "motive" to move money from various accounts at will, including from client settlements, without truthfully disclosing the details to Girardi.  The evidence is thus admissible under Rule 404(b)(2) many times over, consistent with a longstanding principle that "other acts" evidence is admissible "to negative the accused's guilt." United States v. Stevens, 935 F.2d 1380, 1402 (3d Cir. 1991) (quoting 2 Wigmore, Wigmore on Evidence § 304, at 252 (J. Chadbourn rev. ed. 1979) (emph. in original)); see also id. (offering, as example of permissible use of other-acts evidence: "[I]f A is charged with forgery and denies it, and if B can be shown to have done a series of similar forgeries connected by a plan, this plan of B is some evidence that B and not A committed the forgery charged") (quoting Wigmore, supra § 304).

Indeed, appellate courts have repeatedly reversed convictions where courts have excluded far weaker and more attenuated defense evidence relevant to even one of the above 404(b) purposes.  For example, in United States v. Cohen, the defendants were charged with wire fraud, conspiracy, and tax evasion in connection with an embezzlement scheme.  888 F.2d 770 (11th Cir. 1989).  "The theory of defense was based upon an assertion that [other individuals] concocted and executed the fraudulent scheme without the appellants' knowledge or participation."  Id. at 775.  To support this theory, the defendants sought to introduce evidence that the alternative perpetrators engaged in a different embezzlement scheme involving different people at a different

16

time to show that the other individuals were "capable of concocting and managing the fraudulent scheme without [their] participation." Id. at 776.  After the trial court excluded the evidence, the Eleventh Circuit reversed on both evidentiary and Constitutional grounds.  Id. at 777.  In reaching that result, the court observed that evidence of the alternative perpetrators' "opportunity and ability to concoct and conduct the fraudulent scheme without the aid or participation of the [defendants]" was not only proper, but crucial to a complete defense.  Id. at 776-77.  And because a "trial court's discretion does not extend to exclusion of crucial relevant [defense] evidence," the court concluded that it is had "no alternative but to require a new trial." Id. at 777.

The Ninth Circuit has reached similar results in multiple cases where defendants have sought to exculpate themselves by showing that someone else had the "opportunity [or] ability," id. at 776-77, to independently commit the crime with which they are charged.  For example, in Cruz-Garcia, the defendant was charged with conspiring to sell drugs along with a codefendant who, in unrelated circumstances involving unrelated people, had a prior history of selling drugs.  344 F.3d at 953.  At trial, to rebut the government's theory of joint criminal responsibility, the defendant sought to introduce details about his codefendant's prior drug-dealing activity in order to prove that the codefendant was "capable of dealing drugs on his own."  Id.  After the trial court excluded the evidence, the Ninth Circuit found error and reversed the conviction.  Id. at 958.  The court held "that the proffered evidence could not be properly excluded under 404(b) because it was relevant to a matter other than the witness's propensity to commit crime," namely, that the codefendant "was intelligent and sophisticated enough to pull off [the] crime . . . on his own."  Id. at 955.  And it found that the evidence was especially appropriate because it responded directly to the government's theory of joint criminal responsibility.  Id.  Because the evidence "could have cast a reasonable doubt on the theory that the defendant must have been involved," the court had no choice but to "reverse [the] conviction and remand for a

1  new trial." Id. at 958.

2       The Ninth Circuit similarly found error in Wright, where the defendant was

3  charged with possessing CP and sought to introduce evidence that his roommate "had a

4  sexual attraction to minor boys and was proficient with computers."  625 F.3d at 604.

5  As support for his alternative-perpetrator theory, the defendant sought to introduce four

6  pieces of evidence: (1) his roommate's computer-science degree; (2) the fact that his

7  roommate was often alone in the apartment; (3) his roommate's suggestion that the

8  defendant should flee the country following a search of the premises; and (4) the fact

9  that his roommate had the screenname "Presumed Innocent" on gay.com, which was

10  not a CP website.  Id. at 604-05.  On plain-error review, the Ninth Circuit concluded

11  that the trial court wrongly excluded this evidence.  Id. at 608.  As the Wright Court

12  explained, the evidence was properly admissible to prove the roommate's ability and

13  intent to commit the crime, and therefore to show that it was the roommate, rather than

14  the defendant, who was responsible for the CP on the defendant's computer.  Id. In

15  reaching that conclusion, the court emphasized that "the standard of admissibility when

16  a criminal defendant offers similar acts evidence as a shield need not be as restrictive as

17  when a prosecutor uses such evidence as a sword."  Id.  The Court ultimately did not

18  find plain error, however, but only because the defendant was also allowed to admit

19  substantial other evidence shifting the blame to the roommate, and thus fully "put on

20  the '[roommate] did it' defense."  Id. at 609.

21       Here, while the defense theory of admissibility is similar to the ones in the above

22  cases – in that it tends to show that someone else committed the crime independently,

23  to disprove knowing participation, and to rebut a government theory of joint criminal

24  responsibility – the arguments in favor of admissibility in this case are far stronger.  For

25  example, as in Cohen and Cruz-Garcia, the challenged evidence would be offered to

26  show that, rather than joint criminal activity, the charged conduct was carried out

27  entirely without Girardi's participation; but unlike in Cohen and Cruz-Garcia, where

28

                                      18

the defendants pointed to remote conduct involving other people under other circumstances, the challenged evidence in this case involves the same people, the same bank accounts, the same timeframe, and the same deception of Girardi and unilateral action by Kamon.  Similarly, as in <u>Wright</u>, the challenged evidence would be offered to show that another person had the knowledge, motive, opportunity, and intent to commit the crime independently; but unlike in <u>Wright</u>, where the defendant was not charged with joint activity and sought to introduce an alternative-perpetrator theory on his own, here, the Indictment charges Girardi as a coschemer with Kamon, which makes evidence tending to show that Kamon was acting secretly and without Girardi's knowledge directly responsive to the theory set out in the Indictment.  Also, in a manner and to an extent unlike in all of these cases, the evidence here is timely, documented, corroborated by multiple sources, and specific.

To the extent that any other 404(b) prerequisites apply to the defense – a proposition for which there is no support in the caselaw – the admissibility of the challenged evidence remains inarguable.  That Kamon was engaged in a secret pattern of embezzling and unilaterally moving money within and outside of GK throughout the scheme period is established, as relates to the challenged evidence, by the people involved, by bank records (as reflected in the General Ledger prepared by the GK bankruptcy trustee), and by Kamon's own false entries in GK's books.  See Exs. 3,4, 5. Not only that, <u>Kamon affirmed the accuracy of the affidavit supporting the Criminal Complaint</u> in a proffer with the government.  And rather than being remote in time, the challenged evidence involves conduct that occurred at the exact same time as the scheme alleged in the Indictment.  Even setting everything else aside, therefore, the challenged evidence satisfies every conceivable 404(b) requirement.  See <u>United States v. Vo</u>, 413 F.3d 1010, 1018 (9th Cir. 2005) (setting out requirements where government seeks to admit evidence against a criminal defendant).  And this is especially true since it is being offered by the defense.  <u>Wright</u>, 625 F.3d at 608.

///

### d. While the challenged evidence may tend to exculpate Girardi at Kamon's expense, that does not make it "unfairly" prejudicial.

Kamon's final argument – made entirely without reference to Girardi – is that admitting the challenged evidence would violate Rule 403. At least as to Girardi, this argument is equally and entirely without merit.

Rule 403 allows courts to exclude relevant evidence if its "probative value is substantially outweighed by a danger of," among other things, "<u>unfair</u> prejudice." Fed. R. Evid. 403 (emph. added). But because relevant evidence is generally admissible, exclusion is only appropriate where the targeted evidence is of marginal value and the dangers identified in Rule 403 are sufficiently high. <u>See</u> <u>Whitehead v. Bond</u>, 680 F.3d 919, 930 (7th Cir. 2012) ("We employ a sliding scale approach [to Rule 403]: as the probative value increases, so does our tolerance of the risk of prejudice"); <u>Aycock v. R.J. Reynolds Tobacco Co.</u>, 769 F.3d 1063, 1069 (11th Cir. 2014) ("Because it allows a trial court to exclude evidence that is probative, Rule 403 is an extraordinary remedy which should be used sparingly . . . . In applying Rule 403, courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.") (everything omitted, emph. in orig.). Further, because all evidence – especially good evidence – is in some sense prejudicial to a trial adversary, the damage that a piece of evidence does to an adversary's case is not a basis for exclusion; instead, "the question under Rule 403 is one of 'unfair' prejudice – not of prejudice alone." <u>United States v. Munoz</u>, 36 F.3d 1229, 1233 (1st Cir. 1994) (everything omitted); <u>Cruz-Garcia</u>, 344 F.3d at 956 ("Parties always introduce evidence that will do damage to the other side's case; that's the very point of a trial. That evidence may decimate an opponent's case is no ground for its exclusion under 403. The rule excludes only evidence where the prejudice is 'unfair[.]'").

Consistent with the Constitutional right to present a defense, the Ninth Circuit has emphasized that "the exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly." <u>United</u>

20

States v. Haischer, 780 F.3d 1277, 1281 (9th Cir. 2015) (everything omitted).  Under that standard, evidence cannot be excluded under Rule 403 where the thing that purportedly makes it "prejudicial" is the very thing that makes it probative to the defense.  Id. at 1282 ("Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect").

Perhaps if Kamon and the government were willing to concede that Kamon was engaged in a long-running and secret campaign of stealing and misusing money in the GK trust and operating accounts throughout the scheme period, and also that he was falsifying related records and concealing this activity from Girardi, and also that he was therefore likely individually responsible for the charged conduct rather than Girardi, there might be a nonfrivolous argument that the evidence Kamon seeks to exclude is of such limited additional probative value that exclusion would be proper.  But the notion that the government, in a criminal case, can charge a theory of joint criminal liability requiring it to prove Girardi's knowledge and intent, and Kamon, in his own defense, can seek to exculpate himself at Girardi's expense (see Mot'n at 9:15-16), but that Girardi would not also be able to inform the jury of relevant and credible evidence directly undercutting those claims on the theory that it would be "unfairly" prejudicial, is antithetical to not only to Rules 401-403 and the Constitution, but the very the concept of a jury trial.

The evidence that Kamon seeks to exclude is critical to Girardi's defense and neither Kamon nor the government will suffer "unfair" prejudice by allowing Girardi to present it – and thereby contest the allegations with relevant, truthful, and probative evidence – through the adversarial process.  Conversely, Girardi would be extraordinarily prejudiced by its exclusion, which would leave him defenseless – despite having a defense – to the essential elements of the charge and the government's charging theory.  Indeed, the most basic right of an accused in a criminal trial is "the

21

right to a fair opportunity to defend against the State's accusations." <u>Chambers</u>, 410 U.S. at 294; <u>Haischer</u>, 780 F.3d at 1284 (reversing conviction on Constitutional and evidentiary grounds where wire-fraud defendant sought to challenge knowledge and intent by showing evidence of boyfriend's abuse and district court excluded the evidence as irrelevant and prejudicial and told the jury not to consider it); <u>United States v. Whitman</u>, 771 F.2d 1348, 1351 (9th Cir. 1985) (reversing conviction on Constitutional and evidentiary grounds where trial court precluded defendant from rebutting prosecution theory of motive); <u>United States v. Crenshaw</u>, 698 F.2d 1060, 1066 (9th Cir. 1983) (reversing conviction where government successfully precluded defense evidence offered to rebut government theory and evidence).

### 3. The Court should disregard any new arguments offered in the Reply.

Presumably in part because he failed to meet and confer, Kamon made no Girardi-specific arguments in the moving papers. As he admits, however, that is not because he was unaware that Girardi intends to use evidence like the challenged evidence at trial. <u>See</u> Docket No. 192 ¶ 11. It is likely that, in Reply, Kamon will seek to make Girardi-related arguments for the first time that are not encompassed by the moving papers. If he does, the arguments should be disregarded. <u>See</u> <u>Wild v. HarperCollins Publishers LLC</u>, No. 8:12-CV-01191-JST(ANx), 2013 WL 12137684, at *2 (C.D. Cal. Jan. 2, 2013) ("A district court need not consider arguments raised for the first time in a reply brief. Thus, to the extent that Plaintiff seeks to raise new arguments in his Reply that were not addressed in his opening brief – when the Defendants had an opportunity to respond – the Court declines to address these arguments.") (everything omitted). Having violated procedural rules to gain a tactical advantage on the front end, Kamon should not be further rewarded for his violation by allowing him to sandbag Girardi on the back.[8]

---

[8] Though no longer as germane since the Court denied Girardi's <u>ex parte</u>

22

1

### III.  <u>CONCLUSION</u>

2          For the reasons above, the evidence that Kamon seeks to exclude is admissible

3    on multiple independent grounds – most important, Girardi has a Constitutional right to

4    present it in his own defense.

5          The Court should deny the motion.

6

7                                          Respectfully submitted,

8                                          CUAUHTEMOC ORTEGA
                                           Federal Public Defender
9
     DATED:  June 3, 2024           By  */s/ Charles J. Snyder*
10                                       _____

11                                         CHARLES J. SNYDER
                                           Attorney for Thomas Girardi
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    _____

27   application to set a briefing schedule, the declaration submitted in support of Kamon's
     response to that filing significantly overstates the communication that Kamon had with
28   Girardi about the 404(b) issue before filing his motion.  <u>See</u> Snyder Decl. ¶¶ 8-11.

23

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 6,952 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Standing Order. In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  June 3, 2024          By  */s/ Charles J. Snyder*

CHARLES J. SNYDER
Attorney for Thomas Girardi