E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:   scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-00047-JLS |
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. HELENA CHUI PURSUANT TO FEDERAL RULES OF EVIDENCE 401, 402, 403, AND 702 |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its reply in support of motion to exclude the expert testimony of Dr. Helena Chui pursuant to Federal Rules of Evidence 401, 402, 403, and 702.

//

//

1        This motion is based upon the attached memorandum of points and

2   authorities, the exhibit attached hereto, the files and records in

3   this case, and such further evidence and argument as the Court may

4   permit.

5    Dated: June 7, 2024                Respectfully submitted,

6                                       E. MARTIN ESTRADA
                                        United States Attorney
7
                                        MACK E. JENKINS
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9

10                                          /s/
                                        _____
11                                      SCOTT PAETTY
                                        ALI MOGHADDAS
12                                      Assistant United States Attorneys

13                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>Table of Contents</u>**

I.    INTRODUCTION......................................................1

II.   ARGUMENT...........................................................2

     A.    Dr. Chui's Proffered Testimony is Irrelevant and
          Relies on Inapposite Case Law...........................3

     B.    The Supplemental Expert Notice Does Not Cure the
          Defects in Dr. Chui's Proffered Testimony................6

     C.    Dr. Chui's Testimony Should be Excluded Under Rule 403...10

III.  CONCLUSION........................................................12

i

# Table of Authorities

**CASES**

Griffin v. Johnson,
      350 F.3d 956 (9th Cir. 2003) ................................... 4

United States v. Byers,
      730 F.2d 568 (9th Cir. 1984) .................................. 2

United States v. Christensen,
      186 F. Supp. 3d 997 (D. Ariz. 2016) ......................... 11

United States v. Cohen,
      510 F.3d 1114 (9th Cir. 2007) ................................. 5

United States v. Demma,
      523 F.2d 981 (9th Cir. 1975) .................................. 2

United States v. Erickson,
      No. 3:18-CR-00319-MO-06, 2022 WL 72107,
      at *3 (D. Or. Jan. 7, 2022) ................................... 4

United States v. Finley,
      301 F.3d 1000 (9th Cir. 2002) ................................. 5

United States v. Haischer,
      780 F.3d 1277 (9th Cir. 2015) ................................ 11

United States v. Jimenez,
      No. 16-CR-60-A, 2018 WL 6047188,
      at *3 (W.D.N.Y. Nov. 19, 2018) ................................ 4

United States v. Rahm
      993 F.2d 1405 (9th Cir. 1993) .............................. 2, 3

**RULES**

Federal Rules of Evidence 401 ............................... 1, 12

Federal Rules of Evidence 402 ............................... 1, 12

Federal Rules of Evidence 403 ......................... 1, 10, 11, 12

Federal Rules of Evidence 702 ............................ 1, 2, 10

**OTHER AUTHORITIES**

Diagnostic and Statistical Manual of Mental Disorders,
      5th ed., Arlington, VA, 2013, at 647 ......................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Thomas Vincent Girardi ("defendant") continues his attempt to reframe Dr. Chui's proffered testimony on defendant's purported memory issues as a negation of criminal intent without addressing how any such testimony differs from a diminished capacity defense.  Defendant does not explain, nor can he, how his argument that he did not "attain" the requisite mental state for culpability under the wire fraud statute differs from an argument that he lacked the capacity to attain such a state because of a mental disease or defect.  Indeed, as defendant implicitly concedes, Dr. Chui's testimony is only relevant to establish that Girardi had dementia and that he was unable to form the requisite criminal intent by virtue of that defect.  However, Dr. Chui does not intend to go that far based on her initial disclosure or a belated supplemental notice that was served on the government this week.  Rather, Dr. Chui's disclosure and anticipated testimony will only get the defense halfway, i.e., that Dr. Chui believes that defendant currently suffers from dementia.  But her disclosure is bereft of any link between Girardi's purported condition and the "intent to deceive and cheat".  Without this critical nexus, her testimony is irrelevant and only serves to allow the defense to improperly ask the jury to speculate that dementia causes an inability to form criminal intent or knowledge. But that argument would not be based on anything presented at trial, at least not from Dr. Chui's anticipated testimony.  Instead, it would be based on rank speculation and attorney argument, which is precisely why district courts are given "wide latitude in admitting or excluding psychiatric evidence directed to the capacity of a

1  defendant to entertain a specific intent[.]" <u>United States v. Byers</u>,

2  730 F.2d 568, 571 (9th Cir. 1984) (citing <u>United States v. Demma</u>, 523

3  F.2d 981 (9th Cir. 1975) (en banc)).

4      Defendant's reliance on <u>United States v. Rahm</u> and its progeny is

5  misplaced under the facts of this case.  Dr. Chui's proffered

6  opinions are based on her diagnosis of LATE,[1] a progressively

7  degenerative neurological disease, the symptoms of which are not

8  present in any of the cases defendant cites.  Defendant's attempts to

9  leverage inapposite cases to introduce a speculative expert opinion

10 regarding criminal <u>mens rea</u> should fail.  If Dr. Chui believes that

11 defendant's purported condition has anything to do with his ability

12 (or inability) to attain the required mental state, then she should

13 say so.  If she does not, then the defense should not be permitted to

14 argue that the jury should infer beyond what their expert is prepared

15 and willing to say and her testimony should be excluded.

16 **II.  ARGUMENT**

17     Defendant's opposition primarily relies on three Ninth Circuit

18 cases that are factually and legally distinct from this case and do

19 not support the admission of Dr. Chui's testimony.  Defendant's

20 recently produced supplemental expert notice does not alter that

21 conclusion.  Furthermore, Dr. Chui's proffered testimony also should

22 be excluded under Rule 403 of the Federal Rules of Evidence because

23 even if it had probative value (it does not), any such value would be

24 substantially outweighed by unfair prejudice and confusion of the

25 issues, and would mislead the jury.

26

27

---

28      [1] LATE stands for Limbic-predominant age-related TDP-43
   encephalopathy.

2

1

2

### A.   Dr. Chui's Proffered Testimony is Irrelevant and Relies on Inapposite Case Law

As a threshold matter, Dr. Chui's proffered testimony about defendant Girardi's diagnosis made on and after May 31, 2023 is simply not relevant to defendant's conduct charged in the indictment which spans the time period 2010 through 2020.  Dr. Chui's testimony purports to discuss a progressively degenerative disease that is not tethered to <u>mens rea</u> formation and intent during that timeframe. This is the core of the reason that the Ninth Circuit decisions relied upon by defendant (Opposition at 4-8), <u>Rahm</u>, <u>Finley</u>, and <u>Cohen</u>, are inapplicable here and do not support the admission of Dr. Chui's testimony in this case.

In <u>Rahm</u>, the Ninth Circuit held that the district court erred in excluding expert testimony that the defendant suffered from contemporaneous "perceptual difficulties" in a counterfeit currency case.  993 F.2d 1405, 1408 (9th Cir. 1993).  Specifically, the defense expert's testimony "was intended to establish Rahm's diagnosed perceptual difficulties, which were relevant to a fact in issue - whether she knew the money was counterfeit."  <u>Id.</u> at 1413. What is clear and uncontroverted from <u>Rahm</u> is that the defendant's "perceptual deficiency" existed at the same time the defendant was alleged to have committed the crime.  In stark contrast, Dr. Chui did not, and cannot, extrapolate backwards from her diagnosis in 2023 to give an accurate assessment of the defendant's cognitive abilities from 2010 through 2020.  As the Court found:

> Notably, however, although [defendant's hippocampal] atrophy is generally considered to be correlative to memory loss, cognitive impairment, and/or dementia, it is not a "one-to-one" correlation, and persons with brain atrophy can be cognitively unimpaired. Dr. Chui acknowledged that neuroimaging alone cannot determine whether someone has dementia.

3

1    (Dkt. 150 at 38.)

2         Indeed, Rahm's holding actually supports exclusion of Dr. Chui's

3    testimony.  Unlike the defense expert in Rahm, whose testimony on

4    visual perception was clearly linked to defendant's potential failure

5    to examine the currency closely, Dr. Chui's general testimony on

6    hippocampal atrophy and dementia does not offer a link to defendant's

7    criminal intent (or lack thereof).  For example, Dr. Chui does not

8    claim that dementia affects a person's ability to tell wrong from

9    right, or that it makes it less likely someone can have the intention

10   to deceive or cheat.  Rahm makes clear that the "key concern is

11   whether expert testimony will assist the trier of fact in drawing its

12   own conclusion as to a 'fact in issue.'"  993 F.2d at 1411.  Issues

13   with memory – the subject matter of Dr. Chui's proposed testimony –

14   are insufficient to rebut criminal intent.  See e.g., Griffin v.

15   Johnson, 350 F.3d 956, 965 (9th Cir. 2003) ("defendant's borderline

16   intelligence, memory problems, and concentration lapses also do not

17   show that he lacked the specific intent to [commit the charged

18   crime]" and finding a psychologist's evaluation conducted eight years

19   after the offense was "minimally probative") (cleaned up); United

20   States v. Erickson, No. 3:18-CR-00319-MO-06, 2022 WL 72107, at *3 (D.

21   Or. Jan. 7, 2022) (excluding expert testimony regarding memory issues

22   because "Erickson's poor memory could in no way preclude him from

23   forming the intent to [commit the charged crimes] . . . given the low

24   bar necessary to prove a defendant acted intentionally, the presence

25   of such mental deficits would be of no help to a jury in determining

26   whether Erickson acted with adequate mens rea"); United States v.

27   Jimenez, No. 16-CR-60-A, 2018 WL 6047188, at *3 (W.D.N.Y. Nov. 19,

28   2018) ("Memory is not the same as intent, and the defendant has taken

on the heavy burden on his motion to withdraw his guilty plea to show that his mental status . . . at the time of the alleged offense was inconsistent with his specific intent"). It would be improper to allow the defense to introduce Dr. Chui's testimony on dementia and memory and then have the jury speculate on its effects on capacity and criminal intent.

Defendant's reliance on Finley and Cohen are similarly unpersuasive. In Finley, the Ninth Circuit held that the district court erred in excluding the testimony of a psychologist who opined that the defendant suffered from a "closed belief system" in his bank fraud case. 301 F.3d 1000, 1004 (9th Cir. 2002). The court found that, if credited, the defense expert's expected testimony established "Finley's beliefs were rigid and he would distort or disregard information that ran counter to those beliefs." Id. at 1015. Thus, the proffered expert "would have offered an explanation as to how an otherwise normal man could believe that [fake] financial instruments were valid." Id. at 1013.

In Cohen, the Ninth Circuit found error in excluding the testimony of a psychologist that the defendant suffered from Narcissistic Personality Disorder in his tax offense case. 510 F.3d 1114, 1124 (9th Cir. 2007). The defense expert proffered that "a narcissistic personality disorder like Cohen's can cause a person to continue to believe something to be true despite overwhelming evidence of its patent absurdity." Id. Therefore, the expert testimony would "have helped defendant counter the government's suggestion that [the defendant], knew the [fake tax] returns were false." Unlike the degenerative condition that Dr. Chui alleges defendant suffers from, rigid belief systems and personality

disorders, including narcissistic personality disorder, are "[b]y definition . . . an enduring pattern of thinking, feeling, and behaving that is relatively stable over time." Am. Psychiatric Assoc.: <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 5th ed., Arlington, VA, 2013, at 647. In other words, the logical connection that existed between the mental condition of the defendants in <u>Cohen</u> and <u>Finley</u> at trial and their conditions at the time of their alleged offenses was static. No so here, where, according to Dr. Chui, defendant has a "slowly progressive" condition that deteriorates further over time. (Chui Initial Disclosure, Dkt. 206 at 10.) Thus, the proffered expert testimony in <u>Rahm</u>, <u>Finley</u>, and <u>Cohen</u> concerned each defendant's thought process during the time period of the crimes. Whereas here, Dr. Chui does not and cannot accurately discuss or describe the defendant's mental state during the time period from 2010 through 2020.

In sum, Dr. Chui's testimony provides no helpful explanation to the trier of fact and, as discussed further below, defendant's recently produced supplemental expert disclosure does not alter that conclusion.

**B.    The Supplemental Expert Notice Does Not Cure the Defects in Dr. Chui's Proffered Testimony**

On June 4, 2024, defendant served on the government a "Supplemental Rule 16 Expert Notice" for Dr. Chui, a copy of which is attached hereto as Exhibit 1.[2]  In the supplemental notice, defendant lists four categories of proposed testimony.  The first two

---

[2] After receipt of the Chui disclosure dated March 10, 2024 (Dkt. 206), the government repeatedly requested a supplemental disclosure to address the deficiencies discussed above.  Counsel did not provide any such disclosure until three days before this reply was due.

categories reference Dr. Chui's "LATE" diagnosis and defendant's hippocampal atrophy (both of which are a rehash of her competency testimony) and should be excluded because they are based upon her evaluations of defendant in 2021 and 2023 which, as discussed above, are irrelevant to the jury's consideration of the charges in the indictment.  Defendant's reliance on the presence of hippocampal atrophy in his 2017 brain scan and Dr. Chui's proffered testimony that since defendant's purported dementia and atrophy "was caused by a degenerative process, most likely LATE, it would have started prior to the 2017 MRI" (Ex. 1 at 3) does not make such testimony relevant or reliable.  Dr. Chui's tethers this opinion to her treatment of "approximately 20 to 30 patients in the clinical setting with hippocampal volumes in the second percentile for their age and gender, as well as 30 such subjects in the research setting.  None of [whom] were cognitively normal."  (Id.)  However, as the Court previously found:  Dr. Chui did not conduct a random study; her conclusions were drawn from a population of patients who came to her specifically because of cognitive impairment; and therefore, "her clinical experience is of little value in determining the relationship between neuroimaging and cognitive impairment."  (Dkt. 150 at 39.)  By that reasoning, defendant's rehash of arguments made during competency in Dr. Chui's expert disclosures for trial are still of little value and do not draw a link between memory and intent to defraud, which according to defendant is the essential fact at issue that underpins their efforts to recall Dr. Chui at trial.

Furthermore, defendant repeatedly claims that his "failure to pay Girardi Keese clients was not due to [his] knowing participation in a scheme to defraud or intent to cheat and deceive, but from his

1   progressively worsening cognitive impairment and resulting inability

2   to manage a large law firm handling thousands of complex lawsuits"

3   (Opp'n at 5)[3].  Although that statement effectively concedes that

4   Girardi Keese client settlement monies were improperly withheld, it

5   does not account for the fact that defendant is charged with more

6   than just failing to pay clients.  He is charged with affirmatively

7   lying to them about their cases to avoid paying them the money they

8   were rightfully due.  Neither Dr. Chui's initial disclosure nor her

9   supplemental disclosure addresses this fact.

10       The final two categories referenced in the supplemental

11  disclosure (Ex. 1 at 3-5) similarly fail to offer any tangible links

12  between memory and criminal intent.  Category III claims to address

13  defendant's ability to work during any period of cognitive impairment

14  and the tendency of some dementia patients to "mask" symptoms of

15  cognitive decline.  However, neither these purported characteristics

16  nor the examples of them cited in the supplemental disclosure draw

17  any relevant connection to the presence or absence of criminal

18  intent.  For example, nothing about the presence of defendant's

19  support systems at work and at home or defendant's alleged mistaken

20  identifications of his wife or former Girardi Keese attorneys (see

21  Ex. 1 at 3-5) can be characterized as lies or affirmative

22  misrepresentations akin to his charged conduct, nor do references to

23  Dr. Chui's general experience with patients possessing similar levels

24

25       [3] Defendant repeats this phrase at several points in his
    opposition (Opp'n  at 5, 9, 11-12) but fails to explain how Dr.
    Chui's testimony regarding defendant's purported cognitive deficits
26  and law firm management relate to the alleged lies that he told
    clients about their cases (e.g., that non-taxable settlements were in
27  fact taxable; that client funds were being held in a (non-existent)
    interest bearing account; that further approval from courts or
28  mediators was needed to disburse settlement funds when such approval
    was unnecessary and unwarranted).

8

of hippocampal atrophy as defendant tend to negate or cast doubt upon

defendant's criminal intent for his alleged lies and

misrepresentations.

Category IV is a similar rehash of references to anecdotal

statements of defendant's forgetfulness from former Girardi Keese

attorneys, law firm staff, and defendant's personal staff.  (Ex. 1 at

5.)  These anecdotes similarly do not connect the dots between memory

and intent and are thus irrelevant.  For example, nothing about

whether defendant wore the same socks, reused coffee cups, dictated

the same letter or declaration, made the same phone call repeatedly,

or told the same stories over and over again tends to show that

defendant did not have the intent to defraud when he lied to clients

about their settlements.

Finally, as discussed above, Dr. Chui's evaluation of defendant

and opinions regarding his condition post-date the crimes here, and

her attempts at a retrospective analysis fall short of the

reliability required for their admission at trial.  Again, Dr. Chui's

LATE diagnosis is not static.  Rather, it describes a "amnestic

cognitive syndrome that can evolve to incorporate multiple cognitive

domains and ultimately to impair activities of daily living."  (Ex. 1

at 2.)  As such, Dr. Chui's observations in 2023 cannot accurately be

rewound to the relevant time period described in the indictment.[4]

In sum, defendant is trying to have it both ways by alleging

that he is not raising a diminished capacity defense while at the

same time arguing that defendant's various episodic memory lapses and

---

[4] As an aside, the government notes that it is not challenging
Dr. Chui's expertise as a neurologist, although the government does
challenge her expertise on forensic matters.  (See 9/12/23 Tr. 88:13-
17 ("Q: Have you ever conducted a forensic evaluation before?  A: No,
I haven't.  Q: Do you have any training in that?  A: No, I don't.").

1  hippocampal atrophy show that he did not possess a culpable <u>mens rea</u>.

2  Neither defendant's initial nor his supplemental disclosure for Dr.

3  Chui adequately explains how a purported diagnosis of LATE (which, as

4  Dr. Chui conceded cannot be confirmed at this point anyway, <u>see</u> Chui

5  Initial Disclosure, Dkt. 206 at 7), could show that he did not intend

6  to deceive and cheat clients out of their settlements.

7      **C.   Dr. Chui's Testimony Should be Excluded Under Rule 403**

8      Even if it were relevant and reliable (it is not), the testimony

9  of Dr. Chui should properly be excluded under Federal Rule of

10  Evidence 403 because "its probative value is substantially outweighed

11  by a danger of . . . unfair prejudice, confusing the issues, [or]

12  misleading the jury."  Notably, the "the Court f[ound] persuasive the

13  government's experts' conclusions that Defendant is exaggerating his

14  symptoms and partially malingering."  (Dkt. 150 at 37.)  This finding

15  alone should bar admissibility of Dr. Chui's testimony under Rule 403

16  because Dr. Chui's testimony and opinions are based almost entirely

17  on testing, scans, and collateral interviews she considered during

18  the competency proceedings, most of which occurred years after the

19  charged conduct and after a motive to feign and exaggerate symptoms

20  of cognitive decline arose -- notions inherent in Rule 403's

21  prohibition against evidence designed to mislead the jury and confuse

22  the issues.[5]  Defendant's citation to <u>United States v. Christensen</u>,

23  

24      [5] Contrary to defendant's assertion (Opposition at 12), there is
nothing "arbitrary" about the December 2020 date.  Notably,
25  defendant's motive to feign or exaggerate any cognitive impairment
unquestionably arose at that time when Girardi Keese closed and
26  defendant faced mounting legal civil and criminal exposure.  To the
extent defendant is permitted to introduce collateral evidence post-
27  2020, the government should be allowed to introduce evidence of
defendant's malingering during the post-December 2020 timeframe.
28  Allowing such evidence would "open the door" to a trial within a
*(footnote cont'd on next page)*

10

1    186 F. Supp. 3d 997, 999 (D. Ariz. 2016), is factually

2    distinguishable because, among other things, there was no allegation

3    that the defendant in that case was malingering.  Defendant's

4    reliance on United States v. Haischer is similarly unpersuasive.  The

5    excluded evidence in Haischer (domestic abuse) was directly linked to

6    the defendant's duress defense against fraud charges and was

7    problematic in light of a deliberate ignorance instruction.  780 F.3d

8    1277, 1282-83 (9th Cir. 2015).  Here, no such direct link exists

9    between Dr. Chui's proffered testimony and defendant's intent to

10   defraud and the government will not be seeking a deliberate ignorance

11   instruction.

12       Dr. Chui's proposed testimony also fails under Rule 403's

13   balancing test because the danger of unfair prejudice is especially

14   acute due to the "aura or special reliability and trustworthiness"

15   (see Rahm 993 F.2d at 1415) that would adhere to her testimony when

16   compared to the minimal probative value (if any) of her opinions and

17   conclusions.  Because Dr. Chui does not come close to linking

18   defendant's purported condition to the facts at issue in this case,

19   her testimony should be excluded.  See, e.g., Byers, 730 F.2d at 571

20   (excluding psychiatric testimony that was "ambiguous" and would not

21   "have materially assisted a jury in determining whether Byers

22   committed a voluntary, intentional violation of a known legal

23   duty.").

24

25

26

27   _____

28   trial on defendant's efforts to mislead medical experts and the Court
     regarding his competency to stand trial, and would provide further
     grounds for exclusion under Rule 403.

**III.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion to exclude Dr. Chui's proffered testimony pursuant to Rules 401, 402, 403, and 702.

The undersigned, counsel of record for the United States of America, certifies that this brief contains 3,164 words, which complies with the word limit of L.R. 11-6.1.


Dated: June 7, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/
                                       _____
                                       SCOTT PAETTY
                                       ALI MOGHADDAS
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA