Michael V. Severo, Esq.  (SBN.: 072599)
**THE SEVERO LAW FIRM**
301 N. Lake Avenue, Suite 315
Pasadena, CA 91101
(626)844-6400
msevero@mvslaw.com

Attorneys for Defendant,
    CHRISTOPHER KAMON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER KAMON,<br><br>Defendant. | Case No.  23-CR-00047-JLS<br>**DEFENDANT CHRISTOPHER KAMON'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A PRETRIAL ORDER EXCLUDING EVIDENCE OF OTHER ACTS UNDER FED.R.EV. 404(b); MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>Hearing Date:   June 20, 2024<br>Hearing Time:   1:30 p.m.<br>Courtroom 8A, Hon. Josephine Staton |

Defendant CHRISTOPHER KAMON hereby offers his reply to the Government's opposition to his motion to exclude evidence of other acts.

This reply is based upon the motion and supporting authorities, the annexed memorandum of points and authorities, all other papers and pleadings on file in this action and any other oral or documentary evidence that may be adduced at the hearing on the motion.

Dated:  June 10, 2024                                THE SEVERO LAW FIRM

                                          By    /s/ *Michael V. Severo*
                                               Michael V. Severo
                                               Attorney for Defendant
                                                CHRISTOPHER KAMON

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 5

INTRODUCTION ............................................................................................................... 5

ARGUMENT ....................................................................................................................... 7

A.   The Evidence of Other Acts Is Not Inextricably Intertwined with The Main Fraud Scheme ................................................................................................................. 7

B.   The Government Has Not Demonstrated That The Other Acts Evidence Meets The Requirements of Rule 404(b). .................................................................... 11

C.   Rule 403 ............................................................................................................. 13

CONCLUSION .................................................................................................................. 16

CERTIFICATE OF COMPLIANCE ................................................................................ 17

# TABLE OF AUTHORITIES

**U.S. SUPREME COURT CASES**

*Buck v. Davis,* 580 U.S. 100, 103, 137 S. Ct. 759, 766, 197 L. Ed (2017) ..........................7

*Michelson v. United States,* 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948) ..................................................................................................................14

*Old Chief v. United States*, 519 U.S. 172, 180-181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ................................................................................................................ 13, 14

**U.S. COURT OF APPEALS CASES**

*U.S. v. DeGeorge,* 380 F.3d 1203 (9th Cir. 2004)................................................................ 9

*U.S. v. Hitt,* 981 F.2d 422, 424 (9th Cir.1992) ...................................................................13

*U.S. v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985)......................................................... 6

*U.S. v. Jimenez-Chaidez,* 96 F.4th 1257 (9th Cir. 2024)................................................... 11

*U.S. v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) ................................................................7, 10

*U.S. v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020)...........................................................7

*U.S. v. Vizcarra-Martinez,* 66 F.3d 1006, 1013 (9th Cir. 1995)...................................7, 10

*U.S. v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) ..............................................................10

**RULES**

Fed. Rule of Ev., Rule 403 .................................................................................................13

Fed. Rule of Ev., Rule 404(b) .............................................................................................5

**TREATISES**

1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:13 (4th ed. 2023) ...........................................................................................................................14

22B Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 (1st ed. 2016)......10

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

**OTHER AUTHORITIES**

Ninth Circuit Model Criminal Jury Instructions 15.35 (18 U.S.C. § 1343) ........................7

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

The Government opposes KAMON's motion arguing that the proffered evidence is inextricably intertwined with the charges in the Indictment in this case, or in the alternative, that it meets the exceptions to the proscription against admission of propensity evidence as set forth in Fed. Rule of Ev., Rule 404(b).

Painting with a broad brush, the Government masks, and in some instances either overstates or misstates the facts in this case.

The Government concedes that Girardi "managed the firm's business and the movement of money through the firm's bank accounts, including the Interest on Lawyer's Trust Accounts ("IOLTA")." Government's Opposition ("Opp"), p. 1, ll. 8 – 10.

The Government states, without foundation, that KAMON was "the Chief Financial Officer" at Girardi Keese ("the firm"). In fact, KAMON is not an accountant, has had no accounting training, and was nominally the "head of accounting" because he supervised two other employees, all of whom had equal access to the firm's accounting programs and data. In fact, the available evidence from other witnesses is that KAMON "did not know how to be an accountant."

The Government correctly points out that at "Girardi's direction, [KAMON's] role involved writing checks," Opp, p. 1, ll 12 – 13, but misleads the court when it states that his role was also to transfer funds from the IOLTA accounts to pay clients and also pay the firm's expenses. KAMON had no say in the transfer of IOLTA funds. As noted earlier, it was at Girardi's direction that he, or any other accounting department employee, would generate a printed check from the trust accounts, which was subsequently delivered to Girardi's office for signature. Thus, the actual "transfer of funds" from the IOLTA to the operating account only took place when Girardi approved the transfer by signing the checks. Furthermore, a trust account check would only be printed at Girardi's request.

The Government has charged KAMON in two separate cases. In 23-cr-00024 JLS ("00024"), the Government alleges that KAMON embezzled the firm's funds by

diverting them from the firm's operating account to pay for personal expenses.  The Government refers to the actions alleged in the 00024 case as the "Side Fraud Scheme."

In the instant case, KAMON is charged with aiding and abetting Girardi in the misappropriation of client funds from the IOLTA account.  The Government refers to the actions alleged in this case as the "Main Fraud Scheme."

In the Side Fraud Scheme, the Government admits that the allegations stem from KAMON's authority to use the operating accounts.  It does not allege, nor can it, that KAMON embezzled funds from the IOLTA account.

In its opposition, the Government seeks to persuade this court that specific evidence related to invoices to the firm from witness Isidro Bravo which were allegedly paid by the firm were actually for services and material rendered to KAMON.  The Government has marked those exhibits.  Exhibit 332 are images of checks written on the firm's operating account between January 2018 and September 2020, payable to Bravo's Construction.   Exhibit 333 through 339, inclusive, are images of purported invoices from Bravo's Construction between 2011 and 2014.  Exhibit 340 appears to be a listing of amounts mostly between 2011 and 2015, as well as March through May 2019.

The Government also seeks introduction of the testimony of Nicole Rokita and checks written to Rokita management, marked for trial as Exhibit 331.  Exhibit 331 are images of checks written to Rokita Management between June 2017 and September 2018.

The two alleged schemes are completely different.  The actions alleged in 00024 do not include any conduct that supports the elements of the allegations in the instant case.  The request to admit the proffered evidence is in point of fact a request to consolidate the two cases, the elements for which are sorely lacking.

The request to shoehorn the proffered evidence into this case is a blatant attempt to introduce propensity evidence and nothing more.  But a defendant "must be tried for what he did, not who he is," and may be convicted "only for the offense of which he is charged." *U.S. v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985).  "Our law punishes people

for what they do, not who they are." See also, *Buck v. Davis*, 580 U.S. 100, 103, 137 S. Ct. 759, 766, 197 L. Ed (2017). `

The opposition seeks to connect the proffered evidence as "inextricably intertwined," or, failing that, as exceptions under Rule 404(b).

## ARGUMENT

A.  <u>The Evidence of Other Acts Is Not Inextricably Intertwined with The Main Fraud Scheme</u>

At the outset it is worth noting that the Government's assertion at Opp. p. 4, ll. 25 – 28 that KAMON concedes in the motion at page 8-9 that Count Five reflects his diversion of funds for personal use is inaccurate and misleading. KAMON does not concede that at all. There, he points out that the AmEx payment cannot be tied to personal use.

In order to satisfy the inextricably intertwined exception to Rule 404(b), "[t]here must be sufficient contextual or substantive connection between the proffered evidence and the alleged crime." *U.S. v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). In order to establish the requisite connection in a wire fraud prosecution, the proffered evidence must be linked to the elements of the offense. As noted in the motion, the elements of wire fraud are (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; (3) specific intent to defraud. *U.S. v. Loftis*, 843 F.3d 1173 (9th Cir. 2016). To be guilty of wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *U.S. v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). (Italics in the original.)

The Ninth Circuit Model Criminal Jury Instructions 15.35 (18 U.S.C. § 1343) sets forth the requirements of wire fraud as follows:

"First, the defendant knowingly [participated in] [devised] [intended to devise] a scheme or plan to defraud for the purpose of obtaining money or property by means of

false or fraudulent pretenses, representations, or promises [, or omitted facts.] [Deceitful statements of half-truths may constitute false or fraudulent representations];

"Second, the statements made [or facts omitted] as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

"Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

"Fourth, the defendant used, or caused to be used, an interstate [or foreign] wire communication to carry out or attempt to carry out an essential part of the scheme.

"In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements but also the circumstances in which they are used as a whole.

"[To convict the defendant of wire fraud based on omission[s] of material fact[s], you must find that the defendant had a duty to disclose the omitted fact[s] arising out of a relationship of trust. That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance that it would ordinarily exercise.]"

In its opposition, the Government falls woefully short of establishing a connection between the proffered evidence and the elements of wire fraud as alleged in the Main Fraud Scheme.

The opposition argues, without evidence or foundation, that a $9,888 charge to Greencare Designs, LLC were for expenses related to KAMON's property in Las Vegas, Nevada. It does not provide any support for that proposition. Still, it fails to connect the evidence to Girardi's scheme to divert client funds. The Government posits generally that the July 9, 2020, $15,000 payment to American Express (the "AmEx payment") was "partly sourced" from Client 2's settlement funds. First, the Government does not dispute that some of the funds from Client 2's settlement were legitimately

earned by the firm. But the opposition fails to tie the AmEx payment to funds *illegitimately* taken from Client 2's settlement. It only says so without offering any support. Even if it did, however, Girardi's decision – as conceded by all – in taking funds from the IOLTA, i.e., the Main Fraud Scheme, and any perceived complicity by KAMON are not connected in any respect to the AmEx payment in Count Five.

A review of the available discovery clearly shows that Client 2's settlement was received on June 25, 2020. Fees legitimately earned by the firm were deposited on June 26, 2020, by drawing a check from the Torrey Pines Bank IOLTA, signed by Girardi, and deposited in the Nano Bank operating account. Thereafter, additional funds from the Torrey Pines IOLTA were taken from, apparently, Client 2's settlement and from other sources as well. By the time the July 9, 2020, AmEx payment was made, the funds that may be attributed to Client 2 had been exhausted such that it is not possible to connect the payment to Client 2's funds.

Be that as it may, any alleged diversion of funds from the firm's operating account which is alleged to be part of the Side Fraud Scheme is not substantively connected to the Main Fraud Scheme – the misappropriation of client funds by Girardi or to any deceitful statements made to the firm's clients.

The Indictment alleges that Client 2's settlement was unlawfully taken "to pay Girardi Keese payroll expenses and fund a $50,000 check written on the operating account to defendant GIRARDI, which defendant GIRARDI then used to make payments to two exclusive country clubs." Docket Doc. No. 1, Indictment, p. 9, ll. 17-20. Count Five alleges the Amex Payment. Indictment, p. 16. In both instances, the allegations are tied to the Main Fraud Scheme.

To be deemed intrinsic evidence, the requisite connection between the proffered evidence and the Main Fraud Scheme must be that the AmEx payment be deemed to be part of a "single criminal transaction." The Government has failed to make this showing, as KAMON's alleged actions cannot be linked with the fraud alleged in the Main Fraud Scheme. *See, U.S. v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004).

9

The Government does not argue that any of the proffered evidence is specifically connected to any of the counts. Thus, neither Bravo's testimony and related exhibits nor Rokita's testimony and related exhibits are shown to be linked to the charged conduct in this case. The proffered testimony and related exhibits are herein referred to as "the proffered evidence."

In the case of Bravo, Exhibits 333 through 339 are invoices from 2011 and 2014. Exhibit 340 appears to be a listing of amounts mostly between 2011 and 2015, as well as March through May 2019. All of these exhibits predate the actions in Count Five. The Government makes no attempt to connect them as part of a single criminal transaction to Count Five, or any other count in this Indictment.

The same applies to Rokita. Exhibit 331 are checks written between June 2017 and September 2018. The date range of the checks in the exhibit also predates the actions alleged in the Indictment in Counts One through Five.

The Government has not demonstrated that the AmEx payment is shown to be part of the execution of the Main Fraud Scheme. Stated differently, it is not "inextricably intertwined" with the conduct charged in this Indictment consistent with the case law in this Circuit, particularly the guidance offered in *U.S. v. Vizcarra Martinez, supra*.

As explained in *U.S. v. Loftis*, 843 F.3d 1173 (9th Cir. 2016), to be inextricably intertwined, the evidence must be shown to be not an "other" crime. The evidence is offered as direct evidence of the Main Fraud Scheme, not as circumstantial evidence requiring an inference as to the character of the accused. *Id.* at 1176, quoting 22B Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 (1st ed. 2016). (Quotation marks omitted.) To be direct evidence of the Main Fraud Scheme, the Government is required to show that the proffered evidence was part of the overall scheme. Other than arguing, without reference to any evidence, that the AmEx payment allows the admission of *all* the proffered evidence, the Government has failed to carry its burden to show that the witnesses and related exhibits are inextricably

intertwined with the Main Fraud Scheme.

Furthermore, the Government does not make any attempt to establish how the proffered evidence would permit the "prosecutor to offer a coherent and comprehensible story" to allow it to explain the circumstances of the Main Fraud Scheme. Any such argument would also fail. The Main Fraud Scheme was Girardi's scheme to defraud his clients. As alleged in case 00024, the defendant's scheme was intended to defraud Girardi. There is simply no connection between the conduct in the Main Fraud Scheme and the allegations against KAMON in the 00024 case.

Therefore, the Government has not met its burden to admit the proffered evidence as inextricably intertwined.

B.  The Government Has Not Demonstrated That The Other Acts Evidence Meets The Requirements of Rule 404(b).

Nor does the proffered evidence meet the requirements of Rule 404(b).

Here, again, the Government falsely argues that KAMON made "unjustified transfers of client funds from the firm's trust accounts to the operating accounts" to pay for his own personal expenses. Opp. p. 9, ll. 10 – 12. Throughout the opposition, the prosecution labels KAMON's alleged conduct as a "side fraud," a "contemporaneous scheme."

It seeks to force the proffered evidence into Rule 404(b)'s exceptions for intent, knowledge and motive. But here again, it fails to make a coherent argument in that regard.

As noted in the motion, "In making admissibility decisions, the [district] court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *U.S. v. Jimenez-Chaidez,* 96 F.4th 1257 (9th Cir. 2024)*; U.S. v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

There must be a clear connection between the prior act evidence and a disputed

issue at trial. Without such connection, Rule 404's general prohibition against offering character evidence to show propensity to commit crimes would be violated.

Here, the proffered evidence does not tend to prove a material point in the Main Fraud Scheme. It does not establish the elements of wire fraud as set forth in Model Jury Instruction 15.35, to wit, the making of deceitful statements or omissions of fact *to the firm's clients*, or the intent to defraud *the firm's clients*.

The proffered evidence, in many sections is remote in time as it pertains to the charges in the Indictment. Most of Bravo's invoices date back 9 years before the offenses charged in this case. Rokita's checks as far back as two to three years. Again, none of these expenses are tied to the misappropriation of client funds.

The Government has not offered the court anything to establish that the Bravo and Rokita payments were unauthorized or constituted embezzlement by KAMON.

The prosecution seeks to make this court believe that the only way to have embezzled funds from the firm was to have the firm steal funds from its clients. The Government fails to note that the firm reported to the Internal Revenue Service, on the average, income exceeding $50 million for many of the years in question. As noted in the motion, Girardi was a prominent torts lawyer and earned legitimate income far in excess of any amount that the prosecution may try to show was allegedly embezzled by KAMON. In brief, there was no need for Girardi to steal from clients in order for KAMON to steal from Girardi.

Thus, while the Government argues without supporting evidence that KAMON stayed on the job and aided the theft of clients' money in order to allow him to steal from the firm, it cannot point with any particularity to the funds allegedly stolen as having come from the firm's misappropriation of clients' funds.

To aid its flailing position, the Government violates the terms of a proffer letter with KAMON. It seeks to have the court accept its representation that KAMON admitted his participation in the Side Fraud Scheme based on proffers made wherein the Government agreed not to use the evidence except under certain circumstances

none of which are present in this motion.

The issue before the court is whether the conduct alleged in the Side Fraud Scheme is admissible in this case. As proponent of the proffered evidence, the Government has failed to establish any basis for its admission.

C. <u>Rule 403</u>

KAMON contends that that evidence has no relevance at all to the charges in this case. While the lack of relevancy should end the inquiry, defendant addresses the Rule 403 balancing tests and how, on balance, the evidence must be excluded.

In this regard, the Government argument is confined to one conclusory statement that the proffered evidence is "probative of defendant's motive, knowledge, and intent and does not have the tendency to provoke" a significant emotional response. Opp. p. 13-14. The Government keeps to itself in what respect the evidence achieves its purported objective.

"Where the evidence is of very slight (if any) probative value, … even a modest likelihood of unfair prejudice or a small risk of misleading the jury" will justify excluding that evidence. *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir.1992).

Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.... [G]eneralizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily). As then-Judge Breyer put it, "Although ... 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance."" *Old Chief v. United States*, 519 U.S. 172, 180-181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

The Government "may not show defendant's ... specific criminal acts…, even though such facts might logically be persuasive that he is by propensity a probable

13

perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Id.* at 650-651, citing *Michelson v. United States,* 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948) (footnotes omitted).

The opposition erroneously relies on the notion that the unfair prejudice must provoke an emotional response in the jury. Opp. p. 13, ll. 22-23.

"Actually, the term describes two very different kinds of danger. One is emotionalism that can enter the case by way of evidence that is overly charged with appeal to this less rational side of human nature, by rhetorical excess on the part of lawyers, or (less often) witnesses. The other is misuse of evidence that is admissible for one purpose (or against one party) but not another." 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:13 (4th ed. 2023), § 4:13 Reasons for exclusion—Unfair prejudice, citing *Old Chief v. U.S., supra.*

KAMON has not admitted wrongdoing for purposes of the Government's proposed introduction of the proffered evidence. Therefore, it is impossible for the jury to discern his involvement in the Side Fraud Scheme unless the issues presented by such evidence are fully defended. Moreover, the proffered evidence is intended to show that the Side Fraud Scheme netted KAMON tens of millions of dollars, a sum so large that it will cause the jury to be misled and/or confused in believing that KAMON and not Girardi is solely responsible for the theft of clients' funds. In fact, Girardi has filed an opposition to KAMON's motion to exclude the evidence arguing that it intends to use the proffered evidence as a defense.

While there is a modicum of emotion attached to the proffered evidence, its most significant danger is its misuse. In this case, the jury may consider evidence of other

acts of embezzlement too offensive to be disassociated with the charges in this case. To attempt to correct the obvious danger of introducing the evidence, the Government offers to – at a later date – propose "a limiting instruction regarding the significance of the evidence, including its applicability only to Kamon." Opp. p. 14, ll. 4-7.

Despite a limiting instruction to the effect that the evidence is to be considered in some way on issues of motive, knowledge, or intent, there is the ever-present danger that the jury will be unwilling or unable to so confine itself. A limiting instruction in this case – whatever form it takes – is likely to be ineffective in its purpose. The possible ensuing prejudice must be weighed against the statement's probative value which, as seen, is lacking or very low.

Not to be underestimated is the likelihood of waste of time and delay. At the trial setting conference, the Government announced – and it repeats it here – that it would present "a streamlined case-in-chief" which consisted only of the five counts in the Indictment. Relying on that representation, defendant has limited his preparation to the issues related to the alleged misappropriation of funds belonging to four different sets of Girardi clients. Now, it announces that it "will present a limited subset of evidence regarding the Side Fraud Scheme." The Government's downplaying the significance of the "limited subset of evidence" does not consider that the preparation for such evidence is significant and adds an estimated 2 or 3 more days of trial time solely related to the issues presented by the proffered evidence, and that does not take into consideration the time that Girardi's lawyers will spend hammering on this issue. Defendant is not fully prepared for such a different trial and will need additional time to do so. For example, while KAMON had not planned on calling a variety of experts, including forensic accountants, to defend against these charges, it may need to do so to defend against the proffered evidence.

Of course, the introduction of the proffered evidence will turn attention to a side issue that has little or no relevance to the Main Fraud Scheme, and in that sense becomes extremely prejudicial to KAMON.

**CONCLUSION**

For all the reasons stated herein and in his motion, defendant respectfully requests that his motion to exclude evidence of prior "other acts" be granted.

Dated: June 10, 2024                     THE SEVERO LAW FIRM

By  /s/ *Michael V. Severo*
      Michael V. Severo
      Attorney for Defendant
        CHRISTOPHER KAMON

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant CHRISTOPHER KAMON, certifies that this brief contains 3,886 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 10, 2024

/s/ *Michael V. Severo*
Michael V. Severo
Attorney for defendant
CHRISTOPHER KAMON