Michael V. Severo, Esq.  (SBN.: 072599)
**THE SEVERO LAW FIRM**
301 N. Lake Avenue, Ste. 945
Pasadena, CA 91101-4703
(626)844-6400
msevero@mvslaw.com

Attorneys for Defendant,
     CHRISTOPHER KAMON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER KAMON,<br><br>                    Defendant. | Case No.  23-CR-00024-JLS<br>            23-CR-00047-JLS-2<br><br>**DEFENDANT CHRISTOPHER KAMON'S SENTENCING MEMORANDUM; FURTHER RESPONSE TO PRESENTENCE REPORT AND OBJECTIONS THERETO; MOTION FOR VARIANCE AND/OR DOWNWARD DEPARTURE**<br><br>Hearing Date:   April 11, 2025<br>Hearing Time:   9:30 a.m.<br>Courtroom 8A, First Street Courthouse<br>Hon. Josephine L. Staton |

Defendant CHRISTOPHER KAMON hereby presents his position on sentencing and offers his response and further objections to the Probation Department's Pre-sentence Investigation Report ("PSR").

Furthermore, defendant moves for downward departures as hereinafter set forth and for a variance of the guidelines calculation.

In presenting his arguments to the court, defendant Kamon is including nine exhibits labeled A through I.  Because some of the exhibits are subject to this court's protective order and others contain private information, defendant will file them separately <u>under seal.</u>

Dated:  March 28, 2025

THE SEVERO LAW FIRM

By    /s/   *Michael V. Severo*

Michael V. Severo
Attorney for Defendant,
 CHRISTOPHER KAMON

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................4

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................6

INTRODUCTION .................................................................................................6

FACTUAL BACKGROUND ................................................................................7

The Plea Agreement.........................................................................................9

Presentence Investigation Report ("PSR") ....................................................10

DISCUSSION ..................................................................................................... 11

General Principles ......................................................................................... 11

Sentencing Guidelines Calculation ..............................................................14

Analysis Of 18 U.S.C. § 3553(a) Factors ....................................................22

1.   Nature and Circumstances of the Offense ................................................22

2.   History and Characteristics of the Defendant ...................................... 24

3.   The Kinds Of Sentence And The Sentencing Range Established For The
Offenses.......................................................................................................... 24

4.   Need for Sentence Imposed to Reflect Seriousness of the Offense,
Promote Respect for the Law, and Provide Just Punishment for the Offense.
24

5.   Avoid Unwarranted Sentencing Disparities ...........................................27

Request for Variance............................................................................................ 28

PROPOSED SENTENCE .................................................................................... 28

CERTIFICATE OF COMPLIANCE .................................................................... 30

**THE SEVERO LAW FIRM**
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT

*Atkins v. Virginia* (2002) 536 U.S. 304, 311, 122 S.Ct. 2242, 2246, 153 L.Ed.2d 335 .... 28

*Gall v. United States*, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).............................................14

*Kimbrough v. United States*, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) ........................ 13, 14

*Pepper v. United States*, 562 U.S. 476, 510, 131 S. Ct. 1229, 1253, 179 L. Ed. 2d 196

    (2011)............................................................................................................................27

*U.S. v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)......................11, 13

## U.S. COURT OF APPEALS

*U.S. v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)..........................................................11, 14

*U.S. v. Denardi*, 802 F.2nd 269, 277-77 (3rd Cir. 1989).......................................................13

*U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010)................................................................. 26

*U.S. v. Menyweather*, 447 F.3d 625 (9th Cir. 2006) ........................................................... 11

*U.S. v. Whitehead*, 532 F.3d 991 (9th Cir. 2008)............................................................... 26

*United States v. Brown*, 985 F.2d 478 (9th Cir. 1993) ...................................................... 28

*United States v. George*, 949 F.3d 1181, 1184 (9th Cir. 2020)...........................................18

*United States v. Hicks* , 217 F.3d 1038, 1048–49 (9th Cir. 2000)......................................19

## STATUTES

18 U.S.C. § 3553(a)........................................................................................................11, 13

18 U.S.C. § 3553(a)(4)........................................................................................................ 11

## U.S. SENTENCING GUIDELINES

U.S.S.G. § 2B1.1.......................................................................................................... 14, 17

U.S.S.G. § 2B1.1(b)(10)(C) ...................................................................................................15

U.S.S.G. § 2B1.1(b)(2)(A) ....................................................................................................17

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

U.S.S.G. § 2B1.1(b)(2)(A)(iii) ......................................................................... 15

U.S.S.G. § 2D.1(c)(3) ..................................................................................... 14

U.S.S.G. § 3A1.1(b)(1) .............................................................................. 15, 16

U.S.S.G. § 3B1.1 ...................................................................................... 14, 16

U.S.S.G. § 3B1.1(b)(1) .................................................................................... 16

U.S.S.G. § 3D1.2(d) ....................................................................................... 15

U.S.S.G. § 3E1.1 ............................................................................................ 14

U.S.S.G. § 3E1.1(a) ........................................................................................ 15

U.S.S.G. § 4C1.1 ...................................................................................... 14, 15

U.S.S.G. § 5K2.10 .......................................................................................... 24

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Christopher Kamon ("Kamon") was charged with wire fraud in two separate cases.   The allegations as to both cases are quite familiar to this court but are summarized below to provide adequate context.

On November 7, 2022, as he returned from The Bahamas, Kamon was arrested in Baltimore, Maryland, pursuant to a complaint filed in this district. The allegations in the complaint referred to Kamon's alleged embezzlement while an employee of Girardi Keese.  He remained in custody and was thereafter transferred to the Central District of California.  He appeared in this court on December 19, 2022.  He was ordered detained and has been in custody at the Metropolitan Detention Center since that time.

On January 19, 2023, Kamon was charged by Information in case number 23-CR-00024 JLS.  He was charged with a single count of wire fraud violation of 18 U.S.C. § 1343, arising from allegations that he embezzled funds of his employer Girardi Keese, a law firm ("the side fraud").

On January 31, 2023, Kamon was indicted along Thomas Girardi ("Girardi"), the owner of the law firm, on five counts of wire fraud.  The indictment alleges that defendant was the head accountant for Girardi's law firm, Girardi Keese ("GK"), and that he "knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud" several clients of GK ("the main fraud").

On October 8, 2024, Kamon changed his plea and pleaded guilty to the single count in the Information and Count Two of the Indictment.  The plea was entered pursuant to a consolidated plea agreement with the Government.  The parties agreed that the amount of loss was between $3.5 million and $25,000,000, resulting in an upward adjustment of either 18 or 20 levels in the guidelines.   These adjustments include both the main fraud and side fraud cases.

U.S. Probation prepared its Presentence Report ("PSR") and disclosed it on December 27, 2024.   On January 13, 2025, Kamon filed his preliminary objections to the presentence report (Docket No. 444) challenging the guidelines calculation as to the grouping of offenses and amount of loss.

In this memorandum, defendant argues that the amount of loss should not exceed the sums agreed upon in the plea agreement.  Defendant further argues that his role in the main fraud case should be considered a minor role.

Defendant's sentencing position is that after a consideration of all the factors in 18 U.S.C. 3553(a), including his cooperation with the Government by proffering on five different occasions, his sentence should not exceed 30 months.

### FACTUAL BACKGROUND

As noted earlier, the court tried the Girardi portion of the case and is well acquainted with the facts of the main fraud case.

After his arrest in 2022, Kamon, in meetings with prosecutors from this district and the Northern District of Illinois, provided substantial statements regarding the workings of GK, and answered questions posed by investigators, in five separate sessions.  No audio recordings were made of those sessions but written reports by FBI agents were produced.  In these proffer sessions, defendant truthfully and without any expectation of reward, provided the Government with substantial facts.   Reports of these proffer sessions are attached hereto as Exhibit A.

There are other facts, however, that defendant asks the court to consider. Where necessary, this memorandum will refer to the trial transcript in *U.S. v. Girardi*, tried before this court in October 2024.

Girardi was the sole owner of Girardi Keese ("GK") and was, by every measure, a highly successful and effective personal injury attorney.  His cases included mass torts, aviation disasters, and any other case where catastrophic injuries were suffered by his clients.  As a result, Girardi generated substantial

sums derived from the settlement or verdicts obtained from these cases.   As shown on Exhibit A, between 2014 and 2019, tax filings show income of approximately $54.5 million (2014), $47.8 million (2015), $57.2 million (2016), $51.8 million (2017), $46.0 million (2018), and $31.1 million (2019).

Defendant is currently 51 years old.  He holds a bachelor's degree in mathematics from the University of California at Santa Barbara.  He has no prior criminal record.

In August 2000, he began working at GK as a accounting clerk.  Kamon had no training or experience in accounting.   In November 2000, just 3 months after starting his job at GK, Kamon was diagnosed with intestinal non-Hodgkins lymphoma, i.e., cancer.  He underwent surgery to remove the tumor and subsequently underwent 6 months of intensive chemotherapy, followed by 3 months of radiation.   He was off work for a full year.   Despite the short period of time that he had been working at GK, he credits Girardi with having kept him on full salary and covered by GK's health care insurance.  He returned to work at GK in 2001.  In 2004, Girardi promoted him to head of accounting despite his lack of training or experience.

During the time he was employed at GK, Kamon learned that Girardi's business model was to create relationships with those who would refer cases to GK.   Girardi was dedicated to his professional life.  "There was no real social. always worked."  See testimony of Amber Ringler, Trial Transcript ("TT") p. 1909, lines 20 – 25.  This characteristic was corroborated by the testimony of Shirleen Fujimoto at TT, pp. 1953 -1954, regarding Girardi's involvement in bar associations and corporate boards.

Girardi did not advertise.  Instead, he paid lawyers and nonlawyers for referrals.  George Hatcher was an individual who worked on "client development," that is, he would seek out clients and direct them to GK.  A portion of George Hatcher's interview with the Federal Bureau of Investigation ("FBI") is

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

attached as Exhibit B.  Hatcher was paid 15% to 25% of GK's attorney's fees on cases he referred.   Starting in 2013, Girardi agreed to pay Hatcher $50,000 per month for the latter's referral services.  Hatcher was the individual who referred the Lion Air crash case.  Girardi and Kamon are both charged in the Northern District of Illinois with wire fraud related to that incident.    Another example of Girardi's methods was Kimberly Archie.  A copy of her FBI interview is attached as Exhibit C.  Archie worked for Girardi for nine years as a "consultant."  She referred the Ruigomez case among many others.  Her efforts in referring cases resulted in her having an "expense account."  The discovery in this case shows that she charged personal purchases to the expense account, such as Gucci purses, and the like.  Girardi never objected to her expenses.

Understanding that Girardi valued case referrals, Kamon sought and obtained Girardi's assent to compensate him for case referrals above and beyond his salary.  Kamon had formed a relationship with Edwin Aiwazian, Esq., a personal injury attorney whose firm Lawyers for Justice ("LFJ") also represented injured plaintiffs.  A meeting between LFJ, Girardi and Kamon resulted in LFJ associating GK as counsel in catastrophic injury cases.  Over the ensuing years, between 2011 and 2017, LFJ referred a number of cases to GK.  A partial list of the cases referred is attached hereto as Exhibit D.

The relationship between LFJ and Kamon also resulted in Kamon being employed at LFJ.  Kamon offered valuable information to LFJ, and LFJ, in turn, paid substantial sums to Kamon.   A list of payments made to Kamon for his services over the years and amounting to over $1 million is attached hereto as Exhibit E.

### The Plea Agreement

On October 8, 2024, defendant and the Government entered into a plea agreement.  The plea agreement consolidates both cases and is docketed at Docket No. 68 in case number ending in 00024 ("the side fraud case"), and

docket number 308 in case number 00047 ("the main fraud case").   In the factual statement, the plea agreement clearly demonstrates that, with respect to the main fraud, defendant's conduct was to obey the directions of Girardi, transfer funds from trust accounts as directed by Girardi, provided information to Girardi as Girardi requested, and overall executed Girardi's directions. Specifically, the plea agreement cites two specific acts: (a) sending "lulling payments" to the Ruigomez family and (b) writing a check for $2.5 million to Ruigomez.   It is clear that in doing the foregoing acts, Kamon was acting at the direction of Girardi.

Further, defendant admitted in the plea agreement that he embezzled funds that belonged to Girardi.  Plea Agreement, page 24 of 25.  In doing so, defendant used vendors to invoice GK for goods and services that the vendor purportedly provided to GK.   Defendant admits that the goods and services were for his personal benefit including construction projects at his personal residences.   Plea Agreement, page 25.

As noted earlier,  the parties agreed that the amount of loss guidelines would fall in a range of between $3.5 million and $ 25 million, yielding total offense levels 25 to 27.  The parties further agreed  Defendant and the Government are free "to argue that additional specific offense characteristics, adjustments and departures under the Sentencing Guidelines are appropriate." Plea Agreement, p. 9.

### **Presentence Investigation Report ("PSR")**

The PSR was disclosed on December 27, 2024.   Beyond repeating the allegations in the Indictment and Information, the PSR does not shed much light on defendant's actual conduct in the main fraud case.  The guidelines calculation in the PSR combines losses for both cases.  As noted, Kamon filed objections to the guidelines calculation and role in the offense adjustment,  See, docket no. 444 in case ending in 00047, and will not repeat those arguments here.

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

The PSR finds that the actual loss in the main fraud case is $2,310,247 and $6,593,077 in the side fraud case.   However, it finds an intended loss of $26,030,062 based on its view that the payments made to the Ruigomez plaintiffs between 2013 and 2020 should not be credited.  Defendant has disagreed with that position and contends that all payments made prior to the actual discovery of the fraud in December 2020 should be credited.

For purposes of this memorandum, it is sufficient to state that defendant contends that the guidelines calculation in the PSR is incorrect; that the two counts to which defendant pleaded do not amount to "substantially the same harm," and, further, that defendant's conduct in each case require application of different adjustments.  In the guidelines calculation section below, defendant presents his argument on how the guidelines should be calculated.   Moreover, defendant also points the court to his efforts in making amends, i.e., his five proffer sessions with Government agents.

### DISCUSSION

### <u>General Principles</u>

As result of the dual majority opinion in *U.S. v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the final sentencing analysis is done under 18 U.S.C. § 3553(a)(1).   As a component of that analysis, the range provided in the Guidelines is considered by the court, but only on an advisory basis.... *U. S. v. Booker*, supra, opinion by Breyer, J. at page 756.   Thus, while the Guidelines calculation is a required consideration under § 3553(a)(4), the statute requires that the district court fashion a sentence in light of all other statutory concerns as well. *U.S. v. Menyweather*, 447 F.3d 625 (9th Cir. 2006).

In determining the sentence in an advisory guideline regime, this court is obligated to follow the mandate of § 3553(a), i.e., to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the sentencing objectives of subsection (2). *U.S. v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

As material herein, § 3553 provides as follows:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines-

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such Guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;

* * *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

In assessing these factors, neither the statute nor *Booker*, suggests that any one factor is more important, or to be given greater weight, than any other.

As seen in the wording of § 3553, the overriding principle in sentencing is that the court is required to impose a sentence "sufficient, but not greater than necessary," to comply with the express purposes of sentencing found at subsection (a)(2), to wit, retribution, deterrence, incapacitation, and rehabilitation.

This overriding principle is not just a factor to be considered, but rather, it sets a limit on the sentence that the court may impose. *U.S. v. Denardi*, 802 F.2nd 269, 277-77 (3rd Cir. 1989) (Becker, J. concurring in part, dissenting in part).

In *Kimbrough v. United States*, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the Supreme Court specifically highlighted the importance of the "sufficient, but not greater than necessary" mandate of § 3553(a). It held that under *Booker*, the Guidelines are advisory only.... A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing, to wit, retribution, deterrence, incapacitation, and rehabilitation.

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

On the same day that *Kimbrough* was decided, the Court also issued its opinion in *Gall v. United States*, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The Court in *Gall* also reiterated the principle that the Guidelines are not mandatory, "and thus the range of choice dictated by the facts of the case is significantly broadened.   Moreover, the Guidelines are only one of the factors to consider when imposing sentence...." *Id.* at page *602*.

And, it is notable that the district court "may not presume that the Guideline range is reasonable" and it is not to be given more or less weight than any other factor. *U.S. v. Carty*, supra at 991.

The important principle to be gleaned from the wording of the statute is that all of the factors set forth in Section 3553 are to be analyzed with a view towards imposing a sentence that is "not greater than necessary" to comply with the four purposes of sentencing.

The Ninth Circuit in *Carty*, supra, has ordered that all sentencing proceedings are to begin with a determination of the applicable Guidelines range. It also charged the district court with the duty of making a correct calculation because the Guidelines is the "starting point and the initial benchmark," citing *Kimbrough*, supra at p. 574. *Id.* at 991.

### **Sentencing Guidelines Calculation**

The PSR calculated the guideline range, as follows:

| | | |
|---|---|---|
| 1. Base offense level: | + 7 | U.S.S.G. § 2B1.1 |
| 2. Specific Offense Characteristics | +26 | |
| 3. Role in the Offense | + 2 | U.S.S.G. § 3B1.1 |
| 4. Victim Adjustment | +2 | U.S.S.G. |
| 5. Acceptance of Responsibility | - 3 | U.S.S.G. § 3E1.1 |
| 6. Zero-point Offender Reduction | - 2 | U.S.S.G. § 4C1.1 |
| **Total Offense Level** | **32** | |

The PSR combines the amount of loss – which it concludes adds 22 levels –

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

with specific offense characteristics for substantial financial hardship to victims in the main fraud case (+2; § 2B1.1(b)(2)(A)(iii), PSR, ¶¶ 110 – 115) and sophisticated means in executing the side fraud case (+2; § 2B1.1(b)(10)(C), PSR ¶¶ 116 – 117).  In addition, the PSR also adds 2 levels for "vulnerable victims" (§ 3A1.1(b)(1) – an adjustment it applies to victims in the main fraud case – and 2 levels for aggravated role of defendant in the side fraud scheme.   The "adjusted offense level" is computed at 37.  Defendant is given credit (-3) for acceptance of responsibility (§ 3E1.1(a) and (b)), and for being a zero point offender (-2) (§ 4C1.1).

Defendant's Criminal History Category is I.  The guidelines range is 121-151.  The PSR recommends a term of imprisonment at the low end of the guideline, or 121 months.

As noted in the objection, defendant contends that the two cases must be computed separately.   The primary reason for this contention is that defendant's conduct in each case varies significantly.  Also, there is a wide divergence between the amounts of intended loss such that the application of specific offense characteristics unfairly skews the calculation if these enhancements are applied in a unified calculus.

Nonetheless, if the court is inclined to follow U.S.S.G. § 3D1.2(d) which calls for grouping when "the offense level is determined on the basis of the total amount of harm or loss," the computation should be as follows:

| | | |
|---|---|---|
| Base Offense Level | 7 | § 2B1.1(a)(1) |
| Specific Offense Characteristic- | | |
| Loss Amount (per Plea Agreement) | 20 | § 2B1.1(a)(1)(J) |
| Acceptance of Responsibility | -3 | § 3E1.1(a)-(b) |
| Zero Point Offender | -2 | § 4C1.1 |
| TOTAL OFFENSE LEVEL | 22 | |

This total offense level yields a range of 41 – 51 months.

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

<u>Victim Adjustment – Vulnerable Victims</u> – U.S.S.G. § 3A1.1(b)(1) adds 2 levels where a person (A) is a victim of the offense of conviction, (B) is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct and (C) defendant knows or should have known of the victim's unusual vulnerability.  App. Note 2 to U.S.S.G. § 3B1.1(b)(1) (cleaned up).   In this regard, Kamon contends that in his position in accounting he had no interaction with Girardi's clients, was not informed of their particular physical or mental condition, or any other unusual vulnerability. He was indeed aware that the victims were clients of the firm, had suffered major injuries, and were entitled to large sums of money.   However, overall, each victim's vulnerabilities could not have been known to Kamon and thus the above calculation has excluded the adjustment.   Should the court feel that this adjustment applies a 2 level increase will result in a total offense level 24, with a 51 – 63 range.

Rather than a single grouped calculation, however, defendant posits that the calculations should be separate for each case.

### a. Group One – Count Two of the Indictment (Main Fraud Scheme):

| | | |
|---|---|---|
| Base Offense Level | 7 | § 2B1.1(a)(1) |
| Specific Offense Characteristic- | | |
|     Loss Amount (per Plea Agreement) | 18 | § 2B1.1(a)(1)(J) |
| Role in the Offense – Minor Role | -2 | |
| Acceptance of Responsibility | -3 | § 3E1.1(a)-(b) |
| Zero Point Offender | -2 | § 4C1.1 |
|     TOTAL OFFENSE LEVEL | 18 | |

As with the above analysis, defendant has excluded the vulnerable victim adjustment.  Should the court feel that it applies, the resulting total offense level is 20.

1.    <u>Intended Loss and Credits Against Loss</u>.  Contrary to the PSR's loss computation, adding 22 levels, Defendant has added 18 levels resulting from the amount of loss[1].  U.S.S.G. § 2B1.1, App. Note 3(D) titled Credits Against Loss provides that, "Loss shall be reduced by...(i) The money returned...by the defendant or other persons acting jointly with the defendant to the victim before the offense was detected."    The PSR computes the actual loss at $2,310,247.26.  PSR, ¶ 59.   It seeks to have the court find an intended loss of $19,436,985.34 by adding a footnote to explain that the computation is not entitled to credits against loss. PSR, ¶ 74, p. 20, fn. 2.   Girardi's fraudulent conduct was discovered in late 2020, when he was sued in the Northern District of Illinois.   Long before that he had ordered substantial payments to Ruigomez (Victim 1), Selberg (Victim 2) and Saldana (Victims 3&4).    As shown in Exhibit G, these payments were made starting in 2012, with the last payment made to Selberg ($100,000) in October 2020.   Furthermore, "Intended Loss (I) means the pecuniary harm that defendant *purposely* sought to inflict" (Italics added).  Here, there is no evidence that Kamon purposely intended to inflict this pecuniary harm on the victims.   It is clear from the factual basis and all the evidence in this case that his role was limited to writing checks as directed by Girardi.  Thus, while the intended loss concept may be applied to Girardi it does not at all apply to this defendant.  Nonetheless, even if the court finds that Girardi's intent is attributable to Kamon, the payments made to the victims must be credited against any loss, actual or intended.

2.    <u>Substantial Financial Hardship Adjustment</u>- The PSR added 2 levels for this adjustment.  Defendant objects to the application of § 2B1.1(b)(2)(A) to this defendant's conduct in the main fraud scheme.   The section seeks to add 2

---

1 It is noteworthy that the $2,310,247 actual loss in the main fraud case actually results in a 16-level increase.  However, defendant agreed in his plea agreement that the losses were not below $3,500,000 and stands by that agreement.

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

levels if the offense (iii) resulted in financial hardship to one or more (less than five) victims. Application Note 4(F) sets forth factors that the court "shall consider." "Section 2B1.1(b)(2) requires the sentencing court to determine whether the victims suffered a loss that was significant in light of their individual financial circumstances." *United States v. George*, 949 F.3d 1181, 1184 (9th Cir. 2020). In making this determination, the court is guided by the application note in that it sets forth the various factors to be used. Thus, the notes provide:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
>
> (i) becoming insolvent;
> (ii) filing for bankruptcy ...;
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
> (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
> (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
> (vi) suffering substantial harm to his or her ability to obtain credit.
> *United States v. George*, 949 F.3d at 1185.

The evidence in this case does not support a finding of any of the aforesaid factors. No case known to this defendant has applied this adjustment in a situation such as the one at bar. Defendant contends that this adjustment is applicable where the conduct of the perpetrator involves the *taking* of money from the victims by theft or fraud. The facts of this case differ in that the harm caused was the failure to pay proceeds of settlement for bodily injuries – money that the victims may or may not have received depending on the results of their lawsuits. Stated differently, any *financial* hardship suffered by the victims was the result of their injuries, and not due to any conduct of Kamon.

Furthermore, and more to the point, §2B1.1(b)(2) refers to *conduct* that

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

"resulted in" substantial financial hardship.  This language has been interpreted to impose a causation requirement. *Id.,* citing *United States v. Hicks* , 217 F.3d 1038, 1048–49 (9th Cir. 2000) (cleaned up).  Here, the evidence is uncontroverted that Kamon had no contact with the client victims and that his actions in writing the various checks, informing Girardi of the trust account balance and otherwise obeying Girardi's commands meet the causation requirement announced in *George*.   The actions of Kamon in this case could have been undertaken by any other person in the accounting department.  See, e.g., testimony of Norina Rouillard, TT Vol. 5, pp. 917 through 984; Vol. 6, pp. 995 through 1145.   Thus, Kamon's conduct fails to satisfy either the but-for causation test or the proximate cause test.  Kamon, given his role and conduct, could not be said to have foreseen any *financial* harm to the victims nor was his conduct a substantial factor in the victim's financial hardships.  This is, again, because any financial harm was caused by the accident which caused the injuries and not Girardi's failure to pay them the money he recovered for them.

Accordingly, this adjustment should not be applied to Kamon in the calculation of the main fraud guidelines.

3.    Role in The Offense

Defendant contends that he should receive an adjustment for being a minor participant in the fraud perpetrated by Girardi.   Girardi's fraudulent conduct is well documented.  He directed, not only Kamon, but other lawyers in his firm.   While Girardi and the lawyers in charge of the particular cases often lied to clients, Kamon never had little or no contact with the clients.  To the extent that he did have contact with clients, he never lied to them.  See, e.g., testimony of IRS Special Agent Ryan Roberson, TT, p. 1447.   Kamon had access to account balances and was aware of the deficits in the trust account.   He had signatory authority over the operational accounts but not the trust account. According to Agent Roberson, Kamon "assisted" Girardi in transferring funds

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

from the trust account to the operating accounts.  TT, p. 1447.  That assistance
was clearly shown to be printing a check from the trust account at Girardi's
direction and for Girardi's signature.    While the factual basis to the plea
agreement states that Girardi would call Kamon every morning to asked for the
balances on all GK bank accounts, whether trust or operational, Norina Rouillard
testified that the call would be made to the accounting department and that she
provided Girardi with the information.  TT, Vol. 5, p. 921, ll. 9-12.  The most
telling aspect of Kamon's conduct in Girardi's scheme is in the Statement of Facts
in Support of Plea Agreement (Docket No.308), p. 20:  *"If defendant Girardi
instructed defendant Kamon to transfer attorney fees from a case in which fees
had already been taken, defendant Kamon would so inform defendant Girardi.
Defendant Girardi would instruct defendant Kamon to <u>'do it anyways</u>.'  This
was a common practice at Girardi Keese of which other senior lawyers in the
firm were aware."* (Italics and underline added.)  See also, PSR, ¶ 99, p. 27.
Rouillard also testified that neither she nor Kamon ever provided false
information to Girardi.  TT, p. 923, ll. 16-22.

In essence then, Kamon's conduct was to provide information to Girardi
and to follow instructions given by Girardi.   Significantly, other lawyers in the
firm participated to one degree or another.    USSG § 3B1.2 provides that if
defendant was a minor participant in the scheme, the offense level should be
decreased by 2 levels.  This adjustment is applicable to a defendant who "plays a
part in committing the offense that makes him substantially less culpable than
the average participant in the criminal activity."  App. Note 3(A) to USSG § 3B1.2.
Also significant in the application of this adjustment is App. Note 3(C)'s comment
following the suggested factors to be considered:  "For example, a defendant who
does not have a proprietary interest in the criminal activity and who is simply
being paid to perform certain tasks should be considered for an adjustment under
this guideline."

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

Defendant contends that his participation in the side fraud scheme should not detract from his minor participation in the Girardi's main fraud. As mentioned in the statement of facts and established in Exhibit B, Kamon's acts in appropriating GK funds were not dependent on the success of the main fraud scheme. First, Exhibit B demonstrates that GK's legitimate yearly revenues, even in the worst of times, exceeded $30 million, and were more than $50 million in 2016 and 2017. At the Girardi trial, the defense attempted to make a connection but fell short in making a credible showing in this respect. Furthermore, the Government has not made a credible showing that the funds thought to have been embezzled by Kamon can be traced to anything other than GK's legitimate revenues. Thus, Kamon's participation in Girardi's main fraud should not detract from his entitlement to a 2 level reduction for his minor role in Girardi's fraud scheme.

b. **Group Two – Count One of the Information in The Side Fraud Scheme.**

| | | |
|---|---|---|
| Base Offense Level | 7 | § 2B1.1(a)(1) |
| Specific Offense Characteristic- | | |
| Loss Amount (per Plea Agreement) | 18 | § 2B1.1(a)(1)(J) |
| Acceptance of Responsibility | -3 | § 3E1.1(a)-(b) |
| Zero Point Offender | -2 | § 4C1.1 |
| TOTAL OFFENSE LEVEL | 20 | |

In this instance, the loss amount as computed by the PSR is $6,168,077 (PSR, ¶ 55) paid to Isidro Bravo and $425,000 paid to Nicole Rokita, Kamon's ex-girlfriend. The total amount for this offense is thus $6,593,077. While Kamon disputes that he unlawfully took this much in GK funds, he agreed to certain guidelines factors and stands by them. Accordingly, the loss amount as stated in the PSR increases the base offense level by 18 levels.

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

Notwithstanding his agreement, defendant contends that Bravo lied to law enforcement and in his testimony before this court.  Attached as Exhibit H for the court's review are two reports of interviews with Bravo.  In the first interview on April 25, 2024, Bravo stated that, "The majority of the money KAMON paid BRAVO [over $6 million] was used in the remodel of Kamon's ex-girlfriend by the name of Lea Deng.   In his second interview on July 29, 2024, Bravo claimed that he gave Kamon cash back "most of the time."   Notably, the investigation in this case did not turn up Kamon's possession of large amounts of cash.  Bravo's statements in his second interview directly contradicted his statements in the first interview.

However, as noted, defendant stands by his agreement.

Both groups in the guidelines calculation result in total base offense level 20. Based on the provisions of §3D1.4(a), two levels are added for offenses which are equally serious.

Accordingly, the total offense level would be 22, with a 41– 51 month suggested imprisonment time.

### Analysis Of 18 U.S.C. § 3553(a) Factors

An analysis of the §3553(a) factors weigh in favor of a variance from the Guidelines calculation to a level **17**, with a 24 – 30 month imprisonment range.

    1.   <u>Nature and Circumstances of the Offense</u>

Defendant pleaded guilty to two counts of wire fraud, violation of 18 U.S.C. § 1343.   This section is a Class B felony offense and carries a maximum sentence of thirty years.

The facts pertaining to the circumstances of the offense are discussed throughout this memorandum and were thoroughly explored during the investigation and trial of this case.

Defendant was the head of accounting at GK.  While the title appears significant, his lack of formal training and the fact that most financial decisions

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

resided in Girardi, made Kamon little more than an accounting clerk.  To be sure, he had significant authority to sign checks on operating accounts.  And that authority allowed him unrestricted access to GK funds. The transfer of funds from the trust account, however, was done only by direction from Girardi, even when Kamon truthfully informed Girardi regarding the problems with the transfer of funds from a particular client's case.   There is no evidence – nor can there be – that Kamon ever took it upon himself to transfer funds held in trust without Girardi's permission.  Also of significance are the well established facts that Girardi asked for balances on the accounts every morning, as noted above, and that Girardi approved every expense above $5,000.

Girardi was aware of the employees' use of American Express Cards. Shirleen Fujimoto, Girardi's secretary of 26 years, told the FBI that "accounting personnel" complained about use of Amex cards for personal expenses.  As an example, one attorney, who was not a partner in the firm, used the card to pay his real property taxes.  Girardi was aware of the use, and abuse, of the Amex cards and asked Fujimoto to draft a memo in that regard.  See, page 5 of  report on an interview of Shirleen Fujimoto on May 15, 2023 is attached hereto as Exhibit I.

As shown on Exhibit E, Kamon was instrumental in getting cases referred by LFJ.   He misunderstood his contribution to the firm in this regard to mean that he was entitled to compensation – as were George Hatcher and Kimberly Archie.  He did not receive this compensation directly and took it upon himself to make use of the American Express card for some personal expenses.  To be clear, defendant does not claim to have had specific consent to make purchases on GK's American Express cards, to have GK vendors provide him with services on his personal home or properties.  What he did was wrong and he acknowledges that in his letter to this court.

The information is provided simply to highlight the fact that Girardi's own conduct in purchasing high end vehicles for the lawyers, and also for Kamon and

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

Fujimoto, offering to pay for an employee's child's college tuition, paying for someone's breast implants and buying a townhouse for one of the GK lawyers contributed to a culture of extravagance and free spending that may have led to this offense.  The court may consider this information as part of "victim's conduct" pursuant to U.S.S.G. § 5K2.10.

    2.    <u>History and Characteristics of the Defendant</u>

    Kamon was born in Los Angeles to a Japanese father and Vietnamese mother.  He is currently 51 years old.  He has never married and has no children. He was a devoted son and brother.  He took care of his parents until their deaths. He has also helped his siblings in time of need.   He is a kind, decent person.   He met Nicole Rokita, a witness against him in this case, on an online website where she freely and openly represented to be available as an "escort." Kamon naively felt that Rokita could pair with him in "networking" and finding referrals to GK. It was for that purpose that he wrongfully justified paying her $20,000 per month out of GK funds.

    Defendant has written a letter to this court which better explains his actions and feelings of remorse.

    3.    <u>The Kinds Of Sentence And The Sentencing Range Established For The Offenses.</u>

    As noted earlier, 18 U.S.C. § 1343, is a Class B offense, the sentences for which range from probation to 30 years but subject to the limits that it be "sufficient, but not greater than necessary" to fulfill the objectives of § 3553.

    The requested sentence for Kamon falls within the range established for his offense.

    4.    <u>Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.</u>

    Section 3553(a)(2) provides the four sentencing objectives thus:

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

(A) [RETRIBUTION] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) [DETERRENCE] to afford adequate deterrence to criminal conduct;(C) [INCAPACITATION] to protect the public from further crimes of the defendant; and(D) [REHABILITATION] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ....

a. RETRIBUTION. Kamon's conduct, his transgressions, are certainly serious . Yet, the PSR's over-the-top 121-month recommendation – aside from its flawed computation - ranks high among sentences imposed in the entire spectrum of wire fraud cases.

The defendant requests a sentence of 30 months imprisonment. This is essentially a time-served request. He was denied bail at the commencement of the case and has been in custody since November 2022. He arrived at MDC-LA in December 2022. As of the sentencing date, he will be in custody for approximately 28 months.

The defendant's requested sentence is unquestionably "sufficient but not greater than necessary" to accomplish this sentencing objective. The defendant's suggested sentence is indeed substantial retribution for his conduct, given the nature and circumstances of the offense and Ms. Kamon's characteristics.

For an individual who has never committed a criminal offense, the singular fact that he has suffered a felony conviction with all its consequences are adequate retribution for the offense of conviction.

Not to be understated is the nature of the custody he has thus far endured. The court should consider how incarceration at the MDC-LA is qualitatively different that what 28 months at a low security level facility would be. During his time in custody inmate fighting – including deaths – resulted in restrictions and multiple lockdowns which confine the inmates to 8' x 8' cells with a sink and a toilet, sporadic showers, no access to commissary, no family visits, no social phone calls, no legal phone calls, and often restricted legal. As has been often

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

heard expressed, inmates essentially live in a bathroom.  Additionally, MDC has recently experienced substantial financial issues.  Bathrooms – including those used by visitors – have no paper towels and are often nonfunctional.  Interior elevators do not always work, resulting in immense delays in inmate movements.  Commissary, an important aspect of an inmate's mundane existence, has been suspended because of lack of funding.

Overall, the sentence served so far has provided adequate retribution considering all other factors in this case.

b. DETERRENCE. It is beyond dispute that a felony sentence should give anyone pause to commit the offense and thus constitutes adequate deterrence.  The risk of recidivism in this case is minimal considering Kamon's previously crime-free life, his history and characteristics.  Specifically, 30 months of imprisonment followed by supervised release will certainly deter Kamon from engaging in any type of criminal endeavor in the future.  *See, U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) (Holding that a sentence of probation and the fact of a felony conviction provide deterrence in a bankruptcy fraud conviction.) *See also*, *U.S. v. Whitehead*, 532 F.3d 991 (9th Cir. 2008).

c. INCAPACITATION.  Kamon has been incapacitated for the last 28 months as a result of his custodial status.  Incapacitation serves to assure society that a criminal defendant "cools his heels" and does not commit additional offenses.  Defendant's time in custody has adequately met this sentencing objective.  Added to time already served in custody, supervised release will further incapacitate the defendant, although, as noted earlier, the risk of recidivism is extremely low in this case.

d. REHABILITATION.  While custody, Kamon has been the maintenance orderly responsible for cleaning the phones and computers daily at a pay rate of $44 per month.  Additionally,  he is enrolled in the RDAP program called "Breaking the Cycle."  He has not been disciplined at all during his stay at MDC.

5.    <u>Avoid Unwarranted Sentencing Disparities</u>

In *Pepper v. United States*, 562 U.S. 476, 510, 131 S. Ct. 1229, 1253, 179 L. Ed. 2d 196 (2011), the U.S. Supreme Court held that, "Congress, concerned that individualized sentencing had gone too far, wrote a new sentencing law designed to help correct 'disparities' among similar defendants sentenced by different judges. See S. Rep. No. 98–225, p. 45 (1983), U.S. Code Cong. & Admin.News 1984, p. 3182 ('Sentencing disparities' are 'unfair both to offenders and to the public'); *id.,* at 38 (disparities 'can be traced directly to the unfettered discretion the law confers on those judges and parole authorities responsible for imposing and implementing the sentence').

Recently, in this district, in *U.S. v. Mizuhara,* 24-cr-00054-JWH,  a defendant that was hired as an interpreter for baseball superstar Shohei Ohtani and also acted as a de facto manager and gatekeeper to Ohtani, was convicted of bank fraud and subscribing to a false tax return in relation to his embezzlement of nearly $17 million from Ohtani.   The court sentenced Mizuhara to 57 months in federal prison.

In *U.S. v. Holmes*, 18-cr-00258 EDD (N.D. Cal. 2023), defendant was the founder and chief executive officer of Theranos, a health care and life sciences company.  She was charged with 10 counts of wire fraud and 2 counts of conspiracy to commit wire fraud related to deceptive statements made to investors in connection with purported innovative methods of drawing and testing blood and diagnosing patients.  The entire scheme turned out to be fraudulent.  After trial, she was found guilty of three counts of wire fraud (18 U.S.C. § 1343) and one count of conspiracy to commit wire fraud (18 U.S.C. § 1349).  Like Kamon, defendant was educated and had no prior criminal history.  The amount of loss was calculated at $120 million.  She was sentenced to 135 months.  The sentence was later reduced to 9 years.

Cases in which the defendants were the main perpetrators of the fraud

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ◆ PASADENA, CA 91101

resulting in losses much higher than that which could be attributed to Kamon received sentences lower than that which is recommended by PSR.

Applying the concept of proportionality in sentencing,  see, *Atkins v. Virginia* (2002) 536 U.S. 304, 311, 122 S.Ct. 2242, 2246, 153 L.Ed.2d 335 ("It is a precept of justice that punishment for crime should be graduated and proportioned to the offense"), defendant contends that imposing the PSR's suggested sentence violates the concept of proportionality and should, therefore, be rejected by this court.

### **Request for Variance**

Based on the 3553(a) factors as set forth above, as well as Kamon's extraordinary acceptance of responsibility (See, e.g. *United States v. Brown*, 985 F.2d 478 (9th Cir. 1993)) as demonstrated by his willingness to proffer to the Government on five different occasions without any promises of leniency, defendant requests a 3-level variance from the Guidelines.

The Guidelines calculation taking into account the foregoing discussion should be as follows:

| | | |
|---|---|---|
| Base Offense Level | 7 | § 2B1.1(a)(1) |
| Specific Offense Characteristic- | | |
| Loss Amount (per Plea Agreement) | 20 | § 2B1.1(a)(1)(J) |
| Acceptance of Responsibility | -3 | § 3E1.1(a)-(b) |
| Zero Point Offender | -2 | § 4C1.1 |
| Variance | -3 | |
| TOTAL OFFENSE LEVEL | 19 | |

Defendant's Criminal History Category is I.   The guidelines range is 30–37 months.

### **PROPOSED SENTENCE**

Defendant suggests that the court sentence Kamon to 30 months (or time served 28 months) imprisonment, 3 years supervised release, and other fines and

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101

penalties as may be appropriate given defendant's financial condition.

Given his history, the nature and circumstances of this offense, the virtual guarantee that he will not reoffend, defendant's suggested sentence is "sufficient but not greater than necessary" to achieve the sentencing objectives.

Respectfully submitted,

Dated:  March 28, 2025                    THE SEVERO LAW FIRM

By    /s/  *Michael V. Severo*

Michael V. Severo
Attorney for Defendant
CHRISTOPHER KAMON

## CERTIFICATE OF COMPLIANCE

I, Michael V. Severo, counsel of record for Defendant Christopher K. Kamon, certify that this memorandum of points and authorities contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 28, 2025                    THE SEVERO LAW FIRM


By  /s/  *Michael V. Severo*

Michael V. Severo
Attorney for Defendant
CHRISTOPHER KAMON

THE SEVERO LAW FIRM
301 N. LAKE AVENUE, STE. 315 ♦ PASADENA, CA 91101